IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA PORTER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No.   10-CV-07243 |
| TD BANK, N.A., *et al.*, | : | |
| Defendant. | : | |

<u>ORDER</u>

AND NOW this _____ day of _____, 2012, upon consideration of Intervenor's Motion for Summary Judgment, any opposition thereto, and any oral argument thereon, it is hereby ORDERED and DECREED that said Motion is DENIED.

BY THE COURT:

_____
                                                                                    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA PORTER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No.   10-CV-07243 |
| TD BANK, N.A., *et al.*, | : | |
| Defendant. | : | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## INTERVENOR'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Debra Porter, by and through her attorneys, Nochumson P.C., hereby relies upon the factual and legal authority contained within her memorandum of law (the "Brief") in support of her response in opposition to the motion for summary judgment (the "Motion") submitted by Intervenor Pardes Group, Inc.

WHEREFORE, Ms. Porter respectfully requests that this Court deny the Motion in conformance with the proposed Order which is attached hereto.

Respectfully submitted,

NOCHUMSON P.C.

By:   /s/ Alan Nochumson
ALAN NOCHUMSON
1616 Walnut Street
Suite 1819
Philadelphia, PA 19103
(215) 399-1346 (telephone)
(215) 399-1347 (facsimile)
alan.nochumson@nochumson.com (e-mail)

Attorneys for Plaintiff,
Debra Porter

Dated: July 2, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA PORTER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.   10-CV-07243 |
| | : | |
| TD BANK, N.A., *et al.*, | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S RESPONSE IN OPPOSITION TO
INTERVENOR'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Debra Porter ("Ms. Porter"), by and through her counsel, Nochumson P.C., files this memorandum of law (the "Brief") in support of her response (the "Response") in opposition to the motion for summary judgment (the "Motion") submitted by Intervenor Pardes Group, Inc. ("PGI"). For the reasons set forth herein, the Motion should be denied forthwith.

I.    PROCEDURAL AND FACTUAL HISTORY

This matter arises out of a real estate investment transaction gone awry. In 2005, Ms. Porter and her husband, James Porter ("Mr. Porter"), were persuaded by Nunzio Terra ("Mr. Terra") to transfer the property they owned at 1039-55 Frankford Avenue, Philadelphia, Pennsylvania 19125 (the "Property") in an attempt to develop the Property into a residential condominium complex. *See* Affidavits of Mr. and Ms. Porter both of which are dated as of June 18, 2012.[1]

---

[1]  In addition to the Affidavits attached to this Response, Ms. Porter also relies upon the factual allegations contain in her amended Complaint.

A limited liability company named Porterra LLC (the "LLC") was created in Pennsylvania in connection with the anticipated real estate development project. *See id.* Ms. Porter was <u>not</u> a member of the LLC at the time of its creation or at any relevant times herein. *See id.*

On May 20, 2005, Mr. Porter signed a Deed (the "May 20, 2005 Deed") of an even date therewith with the intent of transferring his interest in the Property to the LLC. *See id.* Ms. Porter, however, refused to sign a deed transferring her interest in the Property to the LLC without first obtaining a first lien position in the Property by way of a mortgage as well as a promissory note from the LLC in the face amount of $2.8 million. *See id.* The LLC ultimately relented and agreed to provide her with a purchase money mortgage and a first lien position on the Property and a promissory note in the face amount of $2.8 million if she signed a deed transferring her interest in the Property to the LLC. *See id.*

On July 20, 2005, Ms. Porter signed a deed transferring her interest in the Property to the LLC. *See id.* at ¶ 12. At the time the deed was executed, Ms. Porter received a Mortgage (the "First Mortgage") and a Note (the "Note") from the LLC in the face amount of $2.8 million. *See id..* The execution of the deed on July 20, 2005, the First Mortgage, and the Note were administered by United Land Transfer, LLC ("ULT"), which, unbeknownst to Ms. Porter at the time, was a title company owned and operated by Mr. Terra and others at the time. *See id.* Ms. Porter provided ULT with the original of the fully executed First Mortgage for recording and she maintained a copy of the First Mortgage in her possession. *See id.*

After discovering the existence of the First Mortgage, Defendant Commerce Bank, N.A. (the "Bank") refused to lend money to the LLC to fund the anticipated real estate development project unless Ms. Porter subordinated and relinquished her first lien position in the Property to

2

the Bank. *See id.* Ms. Porter was then presented with a Subordination and Standstill Agreement (the "Subordination Agreement"), among other things, for execution so the Bank, not Ms. Porter, would maintain a first lien position in the Property once the Bank lent the money to the LLC. *See id.*

Although Ms. Porter <u>never</u> agreed to so subordinate her First Mortgage or relinquish her first lien position on the Property, the Bank proceeded with lending the money to the LLC anyway. *See id.* Among other things, the Bank loan is collateralized by way of an Open-End Mortgage and Security Agreement dated August 24, 2005 (the "Second Mortgage") encumbering the Property. *See id.*

As part of this loan transaction, the Bank engaged the services of ULT to not only administer the closing of the loan but also to provide title insurance in connection thereof. *See id.* At the time of settlement, the Bank knew that ULT was owned and operated by Mr. Terra. *See id.*

Unbeknownst to Ms. Porter at the time, ULT only recorded the Second Mortgage and never recorded the First Mortgage against the Property. *See id.*

On or about July 17, 2006, Mr. Porter and Ms. Porter filed suit against Mr. Terra, the LLC and others in state court in connection with the then stalled real estate development project (the "Porter Lawsuit"). *See id.* In the Porter Lawsuit, Ms. Porter, among other things, sought for ULT to record the First Mortgage against the Property to protect her lien position in the Property as to innocent third parties. *See id.* Ms. Porter, however, did not include the Bank as a party defendant in the Porter Lawsuit because the Bank knew of the existence of the First Mortgage at

the time the Second Mortgage was created, executed, and recorded. *See id.*[2]  Although Mr.

Porter verified the complaint in the Porter Lawsuit, Ms. Porter did not.

Soon after the commencement of the Porter Lawsuit, without Ms. Porter's knowledge at

the time, Mr. Terra, on behalf of the LLC, executed an Open-End Mortgage and Security

Agreement dated August 10, 2006 (the "Third Mortgage") in her favor in the face amount of

$2.8 million against the Property. *See id.* Mr. Terra, through ULT, then recorded the Third

Mortgage without Ms. Porter's prior knowledge or consent. *See id.*

In October of 2006, Mr. Cohen, a former state court judge, was appointed as a mediator

in an attempt by the state court to salvage the real estate development project. *See id.* At the

time of his appointment, Mr. Cohen also knew of the existence of the First Mortgage. *See id.*

Mediation concluded without resolution in January of 2007. *See id.*

On February 26, 2007, Mr. Cohen was appointed by the state court as the receiver to

complete the project. *See id.*

During the state court proceedings, Mr. Cohen, as receiver, filed a motion for the state

court to strike the Third Mortgage. *See id.* Ms. Porter made no objection for the Third Mortgage

to be stricken since the First Mortgage protects her first lien position in the Property. *See id.*

The state court then struck the Third Mortgage as a matter of law. *See id.*

In January of 2010, a judgment *in personam* in the total amount of $3,696,001.00 was

entered in the Porter Lawsuit against the LLC and others. *See id.* While the state court refused

to place the judgment for damages ahead of the lien created by the Second Mortgage, the issue of

the priority of liens as between the First Mortgage and Second Mortgage was never addressed by

the state court. *See id.*

---

[2] The Bank did subsequently intervene as an interested party in the Porter Lawsuit.

On February 28, 2007, a mere two (2) days after the appointment of Mr. Cohen as receiver, the Bank initiated a mortgage foreclosure action against the LLC involving the Property. *See id*. Ms. Porter was not a party to the mortgage foreclosure action. *See id*.

On or about September 9, 2010, a judgment in foreclosure (the "Judgment in Foreclosure") was entered in the Bank's favor and against the LLC in the amount of $5,364,322.96. *See id*.

As per the Judgment in Foreclosure, a sheriff's sale of the Property was scheduled by the Bank for January 4, 2011. *See id*.

On December 14, 2010, Ms. Porter initiated this federal court action by filing a Complaint (the "Complaint") against the Bank, seeking declaratory judgment that her First Mortgage has lien priority status over that of the Bank's Second Mortgage as to the Property. *See id*. Later that day, in state court, Ms. Porter filed an Emergency Petition (the "Petition to Stay") to postpone the sheriff's sale of the Property pending final disposition of this federal court action.

On December 15, 2010, the state court entered an Order (the "December 15, 2010 court order") dismissing the Petition to Stay and concluding that Ms. Porter lacked standing to file the Petition to Stay. Later that day, Ms. Porter filed, upon an emergency basis, a motion for the state court to reconsider the merits of the December 15, 2010 court order and, in the alternative, for leave for her to intervene as a "party in interest" in the mortgage foreclosure action (the "Motion for Reconsideration and for Leave to Intervene").

The following day, the state court issued an Order (the "December 16, 2010 court order") whereby the state court directed any party opposing the Motion for Reconsideration and for

Leave to Intervene to file a response thereto by 2:00 p.m. on December 21, 2010 and for the parties to appear for a hearing on said motion on the morning that following day.

At the request of Ms. Porter, the hearing was rescheduled for the morning of January 3, 2011 by way of an Order dated December 20, 2010 (the "December 20, 2010 court order"). *See id.*

On December 29, 2010, the state court issued an Order denying the Motion for Reconsideration and for Leave to Intervene, cancelling the hearing, and refusing to stay the sheriff's sale (the "December 29, 2010 court order").

By way of the December 29, 2010 court order, the state court upheld its previous ruling that Ms. Porter lacked standing to intervene in the mortgage foreclosure action and thus to seek a stay of the sheriff's sale pending disposition of this federal court action. In *dicta*, the state court mentioned in passing that Ms. Porter may have nothing more than a subordinate lien as to the Second Mortgage on the Property and that she should protect her interest in the Property by purchasing the Property at the sheriff's sale.

In doing so, Ms. Porter was denied the opportunity, in open court, as per the December 16, 2010 court order and December 20, 2010 court order, to specifically address the factual and legal issues misstated by the Bank and Mr. Cohen in their written submissions to the state court. *See id.*

On December 30, 2010, Ms. Porter filed a lis pendens on the Property in this Court. *See id.*

On January 3, 2011, Ms. Porter filed, on an emergency basis, in state court a lis pendens on the Property and the Emergency Motion for Reconsideration of the December 29, 2010 court order. *See id.*

6

On January 4, 2011, the sheriff's sale took place. *See id.*

At the Sheriff's Sale, Ms. Porter sat in the back row of the seats assigned for the bidders, along with Mr. Porter and others. *See id.* Prior to the Sheriff's Sale Ms. Porter and Mr. Porter spoke with Jack Azran ("Mr. Azran"), who unbeknownst to Ms. Porter or Mr. Porter at the time is a principal of PGI, about his interest in the Property. *See id.* During their conversation, Mr. Azran acknowledged that he knew of the circumstances leading up to the Sheriff's Sale and the existence of the First Mortgage. *See id.*

At the Sheriff's Sale, the Bank failed to announce that the Property was taking place subject to this pending declaratory judgment action and, thus, Ms. Porter's alleged interest in the Property, despite the previous assurances made by the Bank to the state court. *See id.*

As a result, Mr. Porter attempted to make such an announcement. *See id.* While, in the process of doing so, he was physically removed from the Sheriff's Sale, the chair Ms. Porter was sitting on was removed, and Ms. Porter, who was an innocent bystander, was directed to leave the Sheriff's Sale (and she did) and she was prohibited from submitting a bid to purchase the Property, even though the state court, in the December 29, 2010 court order, specifically held that she had the right to do so in order to protect her mortgage lien on the Property. *See id.*

The Property was sold at the Sheriff's Sale in the amount of $1.25 million. *See id.* After the Sheriff's Sale took place, the undersigned was advised by a representative of the Sheriff's office that Y.N.L.M.E. Inc., not PGI, submitted the highest bid for the Property at the Sheriff's Sale.[3]

Subsequent to the Sheriff's Sale, Ms. Porter filed a petition to set aside the Sheriff's Sale (the "Petition to Set Aside"). In the Petition to Set Aside, she argued, among other things, that

---

[3] The Motion for Reconsideration, which was denied, was only ruled on by the state court by way of the January 6, 2011 court order after the Sheriff's Sale had already taken place.

7

the Sheriff's Sale should not have taken place because this Court should be provided with the opportunity to decide whether Ms. Porter had a lien priority interest in the Property greater than that of the Bank's.

The state court, without a hearing, denied the Petition to Set Aside.

Ms. Porter then appealed the state court's rulings with respect to the Sheriff's Sale to the Superior Court of Pennsylvania.

While the appeal was pending, the state court elected to strike the lis pendens encumbering the Property by way of the state court proceedings.

Soon thereafter, a Sheriff's Deed was issued transferring the Property to Gibor Partners, L.P. ("Gibor"), which apparently purchased PGI's bid at the Sheriff's Sale.

During these federal court proceedings, PGI, the Bank, and Mr. Cohen separately filed motions to dismiss an amended version of the Complaint, arguing that Ms. Porter was collaterally and judicially estopped from claiming that the First Mortgage had a lien priority interest over the Second Mortgage as to the Property.

Oral argument subsequently took place with respect to these motions to dismiss. During oral argument, PGI and others were provided with the opportunity to supplement the motions with any additional documentation filed of record in state court which further supported its contention that the issue of lien priority status as between the First Mortgage and Second Mortgage has already been dealt with in state court.

After being so provided with additional documentation, this Court denied the motions to dismiss, specifically finding that, based upon its review of the state court filings provided by PGI and others, the equitable Doctrines of Collateral and Judicial Estoppel did not preclude Ms. Porter from claiming a lien priority interest in the Property greater than that of the Bank's.

8

By way of motion, this Court did strike the lis pendens encumbering the Property way of these federal court proceedings.

The Superior Court recently denied Ms. Porter's attempt to set aside the Sheriff's Sale.

On May 21, 2012, PGI hurriedly filed this Motion.

Ms. Porter now files this Brief in support of her Response in opposition to the Motion.

II.    LEGAL ARGUMENT

The Motion should be denied based upon the following:

1.    The Denial Of The State Court Appeal Has No Bearing On These Federal Court Proceedings

The state court appeal raised the issues of whether the Sheriff's Sale should have been stayed pending the disposition of these federal court proceedings and whether the Sheriff's Sale should have been set aside due to irregularities which occurred at the Sheriff's Sale.

The Superior Court's refusal to set aside the Sheriff's Sale does not now prevent this Court from issuing the relief Ms. Porter is seeking in these federal court proceedings. To the contrary, this Court could and should still determine that the Property transfer by way of the Sheriff's Sale is subject to the First Mortgage.

While the Superior Court, in its opinion, agreed with this Court that the equitable Doctrine of Judicial Estoppel is inapplicable under the circumstances (in contravention to what the state trial court believed), it disagreed with this Court on the same plain and unambiguous record this Court reviewed when denying the motions to dismiss about the effect the equitable Doctrine of Collateral Estoppel may have on these federal court proceedings.

This disagreement over the application of the equitable Doctrine of Collateral Estoppel should not be viewed by this Court as usurping its power to declare that Ms. Porter has a lien priority interest in the Property greater than the Bank's. Rather, all the Superior Court did was

9

refuse to set aside the Sheriff's Sale, further highlighting the risk PGI took when it purchased the Property at the Sheriff's Sale in the first place.[4]

In bidding on the Property at the Sheriff's Sale, PGI purchased whatever interest in the Property that the Bank had. As pointed out by Ms. Porter, the Bank knew of her interest in the Property prior to the creation of the Second Mortgage and intentionally caused the Second Mortgage to be recorded against the Property rather than the First Mortgage.

It is well-established in Pennsylvania that a junior mortgage which has been recorded does not take priority over an unrecorded senior mortgage if the holder of the junior mortgage possesses notice of the unrecorded senior mortgage:

> [s]uch party has no standing in law or equity to demand that his mortgage, taken with notice, shall have precedence over a prior mortgage held to secure payment of a bona fide loan. This principle is supported by authority as well as by reason. In *Nice's Appeal, 54 Pa. 200*, it is distinctly held that an unrecorded mortgage will avail, not only against the mortgagor, but also against his alienee and mortgagee with notice. In *Mellon's Appeal, 32 Pa. 121*, Mr. Justice STRONG speaking for the court says that notwithstanding the recording acts it has uniformly been held that an unrecorded mortgage is good as against the mortgagor, or anyone claiming under him with notice. And in *Britton's Appeal, 45 Pa. 172*, it was held that a mortgage given for the purchase money of real estate, executed before, but not recorded until after judgments had been entered against the mortgagor, is entitled to priority over them in the distribution of the proceeds of a sheriff's sale of the land where the judgment creditors had actual knowledge of the mortgage before the debts were contracted for which the judgments were obtained. The doctrine of these authorities has been announced and enforced in many other cases decided by this court.

---

[4] It is well-established in Pennsylvania that "[a] Sheriff's Sale is made without warranty" and that "the purchaser takes all the risk, and the rule of *caveat emptor* applies in all its force." *See, e.g., Juniata Valley Bank v. Martin Oil Co.*, 736 A.2d 650 (Pa. Super. Ct. 1999).

*See Girard Trust Company v. Baird*, 61 A. 507, 508 (Pa. 1905); *see also In re 250 Bell Road*, 388 A.2d 297, 301 n. 4 (Pa. 1978) (emphasizing that, under 21 P.S. § 351, "an unfiled mortgage maintains priority over later recorded interests if the persons holding the recorded interests are chargeable with such knowledge").

If what Ms. Porter is alleging is true (and, at this juncture of the litigation, this Court must assume so), applying Pennsylvania law, the Second Mortgage is subject to the First Mortgage and, thus, survived the Sheriff's Sale – "no if's, and's, or but's".

2.   PGI Is Not A Bona Fide Purchaser Of A Property Which Is "Free And Clear" Of The First Mortgage

In Pennsylvania, a bona fide purchaser must pay valuable consideration, have no notice of the outstanding rights of others, and act in good faith. *See, e.g., Poffenberger v. Goldstein*, 776 A.2d 1037, 1042 (Pa. Commw. Ct. 2001) (citation omitted).

Even though Ms. Porter's petition to set aside the Sheriff's Sale has ultimately been disposed of, PGI is still not a bona fide purchaser of a Property unencumbered by the First Mortgage, since PGI was clearly placed on "notice of the outstanding rights of" Ms. Porter.

In its Motion, PGI extensively relies upon the Pennsylvania recording statutes in an attempt to establish its status as a bona fide purchaser which holds title to the Property "free and clear" of the First Mortgage. However, as even PGI acknowledges, its interest in the Property would be subject to the First Mortgage if PGI had actual or constructive knowledge of the existence of the First Mortgage at or prior to the Sheriff's Sale taking place.

There is clearly a genuine issue of material fact about whether PGI knew of the existence of the First Mortgage prior to or at the time of the Sheriff's Sale. According to Ms. Porter, Mr. Azran, a principal of PGI, admitted to his knowledge of the First Mortgage at the time of the Sheriff's Sale, in direct contravention of what PGI alleges in support of the Motion.

11

It also cannot be disputed that PGI learned of the existence of the First Mortgage at the Sheriff's Sale when an announcement was made by Mr. Porter at the Sheriff's Sale of the existence of these federal court proceedings and that the Sheriff's Sale was taking place subject to Ms. Porter's alleged interest in the Property.[5]  Nonetheless, PGI now claims to the contrary, which is yet another genuine issue of material fact which should prevent this Court from entering summary judgment in PGI's favor and against Ms. Porter.

As for PGI's constructive knowledge of the First Mortgage, while the lis pendens filed in state court was stricken subsequent to the Sheriff's Sale taking place, it was placed on the civil docket in the underlying mortgage foreclosure action for the benefit of potential bidders of the Property prior to the Sheriff's Sale.[6]

---

[5]  The underlying factual circumstances differ from that of *Liss v. Medary Homs, Inc.*, 130 A.2d 137 (Pa. 1957), in that the Sheriff's Sale only took place <u>after</u> the Bank assured the state court that such an announcement would be made in order to protect unsuspecting bidders, a lis pendens was filed in the state court proceedings prior to the Sheriff's Sale in order to place such bidders on notice of such an alleged Property interest on Ms. Porter's part, and PGI, through Mr. Azran, admitted its knowledge of Ms. Porter's alleged Property interest at the time of the Sheriff's Sale. Thus, even if Mr. Porter violently assaulted sheriff's deputies, which according to him is not true (illustrating yet another genuine issue of material fact), the Supreme Court's ruling in *Liss* has no bearing on the outcome of this Motion.

[6]  In its Motion, PGI relies upon the Pennsylvania Supreme Court's ruling in *McCahill v. Roberts*, 219 A.2d 306 (Pa. 1966) for the proposition that the striking of the lis pendens makes it a nullity and cannot be construed to impute notice of Ms. Porter's alleged mortgage interest. That, however, is not what *McCahill* stands for.  Rather, the Supreme Court in *McCahill* only clarified that a lis pendens does not constitute an "actual lien on the affected property, but rather merely gives notice to third parties that any interest that may be acquired in the property pending the litigation will be subject to the result of the action" and that a "court may cancel [a] lis pendens if the equities indicate such action." *See id.* at 309.  In *McCahill*, the Supreme Court agreed to strike the lis pendens because the plaintiff was seeking monetary relief which would make the plaintiff whole.  In contrast, Ms. Porter is only seeking equitable relief by way of a declaration from this Court that her First Mortgage, a purchase money mortgage, has lien priority status over the Bank's Second Mortgage.  Under the circumstances, the equities clearly favor Ms. Porter.

At the time of the Sheriff's Sale, the civil docket in the mortgage foreclosure action not only disclosed the existence of the lis pendens filed in state court, but also the existence of these federal court proceedings in which Ms. Porter was and continues to seek a declaration from this Court that her First Mortgage maintains lien priority status over the Bank's Second Mortgage as to the Property.

In state court, Ms. Porter sought to postpone the Sheriff's Sale from taking place pending the disposition of these federal court proceedings. In opposition thereto, the Bank pointed out to the state court that Ms. Porter's alleged rights to the Property would not be prejudiced if the Sheriff's Sale was permitted to proceed because the successful bidder would take title to the Property subject to these federal court proceedings. At the time, the Bank even acknowledged the following: it was unlikely that a third party bidder would bid on the Property; that the Bank, as the likely successful bidder of the Property, would have to await the outcome of Ms. Porter's declaratory action before it could convey clear title to a third party bona fide purchaser; and that, in the less likely event that a third party is the successful bidder at the Sheriff's Sale, that bidder too would take title subject to these federal court proceedings.

Any reasonable individual or entity contemplating whether to place a bid on the Property at the Sheriff's Sale would have reviewed the status of these federal court proceedings prior to the Sheriff's Sale. In doing so, that individual or entity would also have discovered the existence of the lis pendens so filed.

In totality, at the time the Sheriff's Sale took place, PGI, as a potential bidder of the Property, knew full well of the risk it was taking in placing a bid on the Property at the Sheriff's Sale.

13

3.    PGI Was Obligated To Search The Public Record After The Entry Of The
Judgment In Foreclosure And Issuance Of The Writ Of Execution

In the Motion, PGI mistakenly believes that it was not obligated to search the public record after the state court issued a judgment in foreclosure in favor of the Bank and against the LLC, and after the Bank obtained the Writ of Execution.   In doing so, PGI, yet again, misinterprets the cases cited in the Motion and otherwise utilizes faulty logic.

PGI first relies upon *Murray v. Weigle*, 11 A. 781 (Pa. 1888) for the proposition that "a sheriff sale purchaser is 'not bound to look beyond the judgment on the mortgage after a *scire facias* on a mortgage has ripened into a judgment the mortgage is merged in it, even if null and void, is no longer open to attack." The cited passage of that ruling does not mean that PGI has no obligation to look at the public record beyond the date upon which a judgment is issued or a writ of execution is obtained.   Rather, it means that the purchaser at the sheriff's sale may rely upon the legality of the judgment in foreclosure and the issuance of the writ of execution.   Ms. Porter does not challenge the legality of the judgment in foreclosure or of the writ of execution. Instead, she believes that her First Mortgage has lien priority status over the Bank's Second Mortgage.[7]

Ms. Porter alleges, by way of these federal court proceedings, that she obtained a first mortgage lien interest in the Property, which the Bank knew of, prior to the execution and recording of the Second Mortgage.   If Ms. Porter is ultimately successful in this pending federal court action, her mortgage lien on the Property will have lien priority status over that of the

---

[7] For the same reason, the doctrine of merger, which is cited in the Motion, has no effect on the lien priority status as between competing mortgage lien holders.   Rather, the doctrine of merger only applies to the respective rights and obligations of the mortgagee and mortgagor, which is not in dispute here.

Bank's.  If that happens, her mortgage lien will remain on the Property in spite of the Sheriff's Sale taking place.

PGI then, for no discernible reason, cites to Rule 3129.1 of the Pennsylvania Rules of Civil Procedure.  That state court rule deals with "notice to creditors" and has no impact upon the obligation of potential bidders to review the public record prior to the sheriff's sale.

PGI then cites to other portions of the Pennsylvania recording statutes for the effect that proper indexing and recording, or lack thereof, of a mortgage has upon subsequent purchasers. What PGI fails to acknowledge in this portion of the Motion is that the Bank, prior to the Sheriff's Sale, stated in no uncertain terms, in a writing which was of public record, that the Sheriff's Sale was taking place subject to this pending federal court action.  Moreover, PGI readily admits in an earlier portion of the Motion, if PGI had actual or constructive knowledge of the First Mortgage, its purchase of the Property at the Sheriff's Sale would be subject to the First Mortgage.  Thus, whether the First Mortgage was recorded or indexed is a red herring.

15

III.    CONCLUSION

For all of the reasons stated herein, Ms. Porter respectfully requests that this Court deny the Motion in its entirety.

Respectfully submitted,

NOCHUMSON P.C.


By:    /s/ Alan Nochumson
        ALAN NOCHUMSON
        1616 Walnut Street
        Suite 1819
        Philadelphia, PA 19103
        (215) 399-1346 (telephone)
        (215) 399-1347 (facsimile)
        alan.nochumson@nochumson.com (e-mail)

        Attorneys for Plaintiff,
        Debra Porter

Dated: July 2, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA PORTER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | No.    10-CV-07243 |
| TD BANK, N.A., *et al.*, | : | |
| Defendant. | : | |

## AFFIDAVIT

I, DEBRA PORTER, being duly sworn according to law, depose and say that:

1. I, Debra A. Porter am an adult citizen and resident of the State of Arkansas with a home address located at 121 Knollwood Lodge Hot Springs AR. 71913 and am of sound mind and body to give this affidavit.

2. I attended the Sheriff sale located at 3801 Market St. Philadelphia PA. conducted on January 4, 2011 with my husband, brother-in-law and mother-in-law.

3. My husband and I saw Nunzio Terra's former partner's brother, Greg Guzman at the Sheriff Sale.

4. My Husband yelled over to him and said "Are you interested in my property? ". He said, "I'm not, but he is and pointed to the person sitting right in front of me. He was with two other Gentlemen

5. My husband then walked over to speak with Greg Guzman for about two to three minutes. Greg Guzman gave my husband his business card. (Exhibit #1)

6. When my Husband returned from speaking to Mr. Guzman, My Husband sat down and lean forward and said to the man "Are you interested in my property?"

7. The man said, "Yes I am." My Husband said "The property is in litigation in Federal Court." The man said, "I know about your wife's mortgage."

8. My husband and the man then got up and walked out into the lobby.

9. When my Husband returned I asked him what did he say, what is his name?  My Husband said "I don't know Jack Asserie or something like that, He would not give me a business card."

10. I wrote his name in the Sheriff Guide Booklet (Exhibit #2)

11. About thirty to forty-five minutes before the Sheriff Sale The man wanted to talk to my Husband again in the Lobby.  They both returned just before the Sheriff sale started for my property.

12. In the court proceedings in 2011,  one of the verifications was signed by Jack Azran, my husband showed me the verification he said "That was the guy's name sitting in front of you at the Sheriff Sale, the same guy I spoke with in the Lobby." (Exhibit #3)

13. I started doing research on the internet and sure enough the pictures I found proved to be the same man, who signed the verification in 2011 and was sitting directly in front of me and made the statement "Yes I am ….I know about your wife's mortgage."

14.  I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.


Notarized by.

Debra A. Porter Dated: June 18, 2012

**Exhibit # 1**

Greg Guzman's   Business Card



# Exhibit # 2

January 2011 Sheriff's Sale Guide, with page 19



$10.00

Subscribe to
Save You

**A Directory for the**
**Sheriff's Sale Buyer**
Featuring Condition
Indexing, Postponement
Current Listings with more than
400 matching photos

Writ 277-491
3442 Oakmount St

Writ 277-539
7324 Brentwood Rd

Writ 277-589
6025 Overbrook Ave

**FOR MORE INFORMATION**
**CALL (215) 772-1808**

VISIT WWW.SHERIFFSALE.COM FOR POSTPONEMENT PHOTOS

January 2011   www.SHERIFFSALE.com   Volume 13  Number 1



**Philadelphia**
**Sheriff's Sale Guide**

35th Wd 1,057.50 sq. ft. BRT# 3: 245600 Improvements: Residential
CAMILLA BROWN C.P. February Term, 2007 No. 3735 $91,264.04 Scott A. Dietterick, Esq.

**275-307**

6344 Ardleigh St. 22nd Wd 2,440.75 sq. ft. BRT# 221292100 Improvements: Residential Real Estate ROCHELLE GIBSON AND DENISE GIBSON AND EDWARD L. JENKINS C.P. April Term, 2010 No.002301 $218,264.43 Stern and Eisenberg LLP

**275-314**

7038 Algard St. 55th Wd 2,700 sq. ft. BRT# 552358600 Improvements: Residential Property DEBORAH J. HANDLY AND PETER SELLECCHIA C.P. March Term, 2010 No. 0444 $91,304.51 Michael T. McKeever, Esq.

**275-315**

5635 Westminster Ave. 4th Wd 825.15 sq. ft. BRT# 042183200 Subject to Mortgage Improvements: Residential Property SHARON GREENE C.P. June Term, 2009 No. 4069 $53,114.66 Michael T. McKeever, Esq.

**275-322**

400 N. Gross St. 34th Wd 818.56 sq. ft. BRT# 343064900 Improvements: Residential Property CHRISTOPHER DAVIS C.P. April Term, 2010 No.02057 $101,581.73 Phelan Hallinan & Schmieg, LLP

**275-333**

9505 Frankford Ave. 65th Wd S/D W B/G 1 Sty Masonry; Improvements: 6,523.81 sq. ft. BRT# 652201200 Subject to Mortgage Improvements: Residential Dwelling DANIEL ALTOMARI C.P. June Term, 2008 No.01943 $186,876.90 McCabe, Weisberg & Conway, P.C.

**275-340**

4413 Fairmount Ave. 6th Wd 3,217.98 sq. ft. BRT# 061139010 Improvements: Residential Property SHERRY JONES C.P. August Term, 2009 No. 00262 $144,079.02 Michael T. McKeever, Esq.

**275-347**

6535 Limekiln Pike 10th Wd located on Easterly side of Limekiln Pike 160 ft. 3-1/2 in. SE of 66th Ave. Frt: 20 ft. Depth: 96 ft. (Irregular) BRT# 102048400 GREGORY LOGAN C.P. June Term, 2008 No. 00396 $28,795.82 Phillip D. Berger, Esq.

**275-351**

4125 E. Roosevelt Blvd. 23rd Wd 1,728 sq. ft. BRT# 233016800 Improvements: Residential Property FANNY ALEMAR C.P. March Term, 2010 No. 02253 $117,992.46 Phelan Hallinan & Schmieg, LLP

**275-352**

2639 Aramingo Ave. 31st Wd 881.15 sq. ft. BRT# 312146500 Improvements: Residential Property HASHEM HAMDALLAH C.P. February Term, 2010 No. 00705 $109,035.65 Phelan Hallinan & Schmieg,LLP

**275-354**

5955 Chester Ave. 40th Wd 1,448.75 sq. ft. BRT# 401118200 Improvements: Residential Property CHRISTIAN DIAZ C.P. May Term, 2009 No. 02774 $51,102.44 Phelan Hallinan & Schmieg, LLP

**275-355**

623 E. Lippincott St. 33rd Wd 745.50 sq. ft. BRT# 331021600 Improvements: Residential Property MARTIN J. ROTH AND CAROL F. ROTH C.P. September Term, 2008 No. 03210 $58,064.45 Phelan Hallinan & Schmieg, LLP

**275-356**

3732 N. 15th St. 13th Wd 1,552 sq. ft. BRT# 131147800 Improvements: Residential Property TANISHA HOLMES C.P. November Term, 2009 No. 00048 $99,894.92 Phelan Hallinan & Schmieg, LLP

**275-358**

2808 Amber St. 25th Wd 770 sq. ft. BRT# 252444200 Improvements: Residential Dwelling NICHOLAS LOMAX C.P. January Term, 2010 No. 02437 $59,132.33 Mark J. Udren, Esq.

**275-359**

2115 E. Birch St. 25th Wd 750 sq. ft. BRT# 252153600 Improvements: Residential Dwelling GUENNADI STARCHENKO A/K/A GUENNADI STARTCHENKO AND VIOLETTA RUCHKO C.P. May Term, 2010 No. 04658 $55,093.40 Mark J. Udren, Esq.

**275-362**

836 Chelten Ave. 12th (formerly the 22nd) Wd 2,275 sq. ft. BRT# 122117500 Improvements: Residential ALBERT W. CHRISTIAN C.P. May Term, 2006 No. 03565 $45,240.44 Michael T. McKeever, Esq.

**275-363**

1718 W. Juaniata St. 13th (formerly part of the 43rd) Wd 741.50 sq. ft. BRT# 132302500 Improvements: Residential Property RANDOLPH WEAVER AND JULIE L. WEAVER A/K/A JULIE L. JOHNSON C.P. August Term, 2009 No. 02101 $58,145.05 Michael T. McKeever, Esq.

**275-369**

6916 Oakland St. 54th (formerly 35th) Wd 1,625.57 sq. ft. BRT# 542380200 Improvements: Residential JOSE B. FERREIRA C.P. January Term, 2009 No.02438 $173,330.81 Michael T. McKeever, Esq.

**275-370**

6127 Morton St. 59th Wd 1,516 sq. ft. BRT# 592207500 Improvements: Residential Dwelling CHARMINA JOHNSON C.P. May Term, 2010 No. 02277 $49,083.81 Mark J. Udren, Esq.

**275-372**

332 Magee Ave. 35th Wd 2,495 sq. ft. BRT# 353095800 Improvements: Residential Property STEVEN J. CAMPBELL C.P. May Term, 2008 No. 02928 $80,129.16 Phelan Hallinan & Schmieg, LLP

**275-373**

3731 N. Percy St. 43rd Wd 720 sq. ft. BRT# 432333600 Improvements: Residential Property SUSIE WILLIAMS C.P. May Term, 2010 No. 01637 $60,466.26 Phelan Hallinan & Schmieg, LLP

**275-375**

6512 Musgrave St. 22nd Wd 1,320 sq. ft. BRT# 221232400 Improvements: Residential Property RUQAYYAH B. KARIM C.P. September Term, 2009 No. 00515 $101,756.55 Phelan Hallinan & Schmieg, LLP

**275-376**

3173 Tulip St. 25th Wd 751.24 sq. ft. BRT# 252363600 Improvements: Residential Property HENRY P. MASCINO AND MARGARET MASCINO C.P. January Term, 2009 No. 03408 $26,293.58 Phelan Hallinan & Schmieg, LLP

**275-386**

6477 N. 12th St. a/k/a 6415 N. 12th St. 49th Wd 6,138.93 sq. ft. BRT# 493132400 Improvements: RENEE LIFE C.P. May Term, 2008 No. 3787 $248,924.20 + Interest Daniel J. Mancini, Esq.

**275-389**

5959 N. Beechwood St. 17th Wd 1,260 sq. ft. BRT# 172498500 Improvements: Brick Messuage or HELEN E. BERGER C.P. May Term, 2010 No. 3150 $56,770.98 Scott A. Dietterick, Esq.

**275-390**

5028 Hazel Ave. 46th Wd 2,200 sq. ft. BRT# 462026300 Improvements: Residential Property JEFFREY THOMPSON C.P. March Term, 2010 No.01848 $206,515.70 Kristine M. Anthou, Esq.

**275-392**

6524 Bobolink Pl. 40th Wd on the Southeasterly side of Bobolink Pl. 135.17 ft. Northeasterly side of 66th St. Frt: 19.94 ft. Depth: 538.12 ft. BRT# 406567913 PATRICK TURRY C.P. September Term, 2009 No.00441 $191,071.90 Louis P. Vitti, Esq.

**275-393**

2105 Fanshawe St. 54th Wd 1,683 sq. ft. BRT# 541144400 Improvements: Residential Dwelling KAY K. BELLAMY A/K/A KAY BELLAMY-MORRIS C.P. February Term, 2008 No. 003632 $130,187.75 Martha E. Von Rosenstiel, Esq.

**275-394**

164 W. Oxford St. 18th Wd 704 sq. ft. BRT# 182185500 Improvements: Residential Dwelling CHONG KIM C.P. July Term, 2009 No. 003796 $168,256.33 Martha E. Von Rosenstiel, Esq.

**275-399**

3147 Agate St. 25th Wd 693.89 sq. ft. BRT# 252335800 Improvements: Residential Property MARKEYES ANDERSON C.P. February Term, 2007 No. 01597 $38,619.36 Michael T. McKeever, Esq.

**275-402**

187 W. Weaver St. 22nd Wd 955.35 sq. ft. BRT# 223031600 Improvements: Residential Property JAYSON D. HENDERSON C.P. May Term, 2010 No.02205 $55,579.10

4078 Creston St. 62nd Wd 917.40 sq. ft. BRT# 622192600 Improvements: Residential Property MARY T. LEONARD AND TIMOTHY E. LEONARD C.P. March Term, 2009 No. 004160 $88,339.15 Christopher A. DeNardo, Esq.

**275-405**

1802 N. 22nd St. 32nd Wd 1,360 sq. ft. BRT# 322089300 Improvements: Residential Property WILL A. PITT, JR. C.P. May Term, 2010 No. 002716 $141,173.01 Christopher A. DeNardo, Esq.

**275-417**

7219 Sommers Rd. 50th (formerly the 42nd) Wd 2,051.52 sq. ft. BRT# 501324700 Improvements: MICHAEL PILGRIM AND TRACI PILGRIM C.P. March Term, 2010 No. 02960 $106,726.72 Michael T. McKeever, Esq.

**275-423**

4848 Roosevelt Blvd. #2 35th Wd 2,750 sq. ft. BRT# 351026100 Improvements: Residential Property WILLIAM J. COLLINS, III A/K/A WILLIAM COLLINS C.P. March Term, 2009 No.02204 $208,398.95 Phelan Hallinan & Schmieg, LLP

**275-426**

844 Marlyn Rd. 34th Wd 1,480 sq. ft. BRT# 344282300 Improvements: Residential Property CHERYL D. SYKES C.P. October Term, 2009 No.05077 $133,208.86 Phelan Hallinan & Schmieg, LLP

**275-427**

370 Tomlinson Place 58th Wd 3,285 sq. ft. BRT# 582185800 Improvements: Residential Property MICHAEL GEREAGHTY C.P. May Term, 2008 No. 00366 $296,913.40 Phelan Hallinan & Schmieg, LLP

**275-429**

5311 Castor Ave. 23rd Wd 4,270.98 sq. ft. BRT# 234195000 Improvements: Residential Property RONALD E. ELLIS A/K/A RONALD ELLIS AND DEANNA D. ALEXANDER A/K/A DEANNA ALEXANDER C.P. November Term, 2008 No. 02457 $300,392.51 Phelan Hallinan & Schmieg, LLP

**275-446**

2311 N. 33rd St. 28th Wd Row 3 Sty Masonry; Improvements: 5,106 sq. ft. BRT# 282237400 Improvements: Residential Dwelling FRED BERRY A/K/A FRED D. BERRY C.P. November Term, 2009 No. 05246 $59,278.46 McCabe, Weisberg & Conway, P.C.

**275-447**

340 E. Church Ln. 12th Wd 6,732.54 sq. ft. BRT# 122032400 Subject to Mortgage CLIFFORD SMITH C.P. March Term, 2010 No. 01745 $118,678.25 plus interest, costs John C.

**275-451**

3536 N. 19th St. 11th Wd Row 3 Sty Masonry; Improvements: 4,765.00 sq. ft. BRT# 112273500 Residential KAREEM COMPTON C.P. June Term, 2008 No. 05456 $97,352.70 McCabe, Weisberg & Conway, P.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA PORTER, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.    10-CV-07243 |
| | : | |
| TD BANK, N.A., *et al.,* | : | |
| Defendant. | : | |

## AFFIDAVIT

I, James E. Porter, being duly sworn according to law, depose and say that:

1. I, James E. Porter Sr. I am an adult citizen and resident of the State of Arkansas with a home address located at 121 Knollwood Lodge Hot Springs AR. 71913 and am of sound mind and body to give this affidavit.

2. I attended the Sheriff sale located at 3801 Market St. Philadelphia PA. conducted on January 4, 2011 with my wife, brother  and Mother.

3. I saw Nunzio Terra's former partner's brother, Greg Guzman at the Sheriff Sale.

4.  I yelled over to him and said "Are you interested in my property?" He said, "I'm not, but he is and pointed to the person sitting right in front of my wife. He was with two other Gentlemen

5.  I then walked over to speak with Greg Guzman for about two to three minutes.  Greg Guzman gave me his business card. (Exhibit #1)

6.  When I returned from speaking to Mr. Guzman, I sat down next to my wife and behind the three men sitting in front of  us in the auditorium for the January 4, 2011 Sheriff Sale

and lean forward and said to the man on the left end of the row  "Are you interested in my property?"

7.  The man said, "Yes I am." I said "The property is in litigation in Federal Court." The man said, "I know about your wife's mortgage."

8.  I asked to speak with the man, We got up and walked out into the lobby.

9.  When I returned to my seat my wife asked me, "What did he say, what is his name?"

10. I said "I don't know Jack Asserie or something like that, He would not give me a business card."

11. About thirty to forty-five minutes before the Sheriff Sale The man wanted to talk to me again in the Lobby.  We (my brother and I) met with two men, (the second man was not one of the three men sitting in front of my family in the Sheriff auditorium) I talked about the federal action for my wife's mortgage (10-07243), my mother's mortgage from 1995 which still is not satisfied, my relationship with Nunzio Terra, The Billboard Lease Agreement.  I asked him if he is Italian (because his skin was so tan at the time) He told me he is Jewish like his partners. Three of us, returned to our seats just before the Sheriff sale started for my property.

12. Months Later, In the court proceedings in 2011, I noticed on the computer one of the verifications was signed by Jack Azran, I showed the verification to my wife and said "That was the guy's name sitting in front of you at the Sheriff Sale, the same guy I spoke with in the Lobby." (Exhibit #3)

13. I immediately called my wife's Attorney Allen Nochumson and explained the story above. He said, "I know who is Jack Azran."

14.  I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Notarized by.

James E. Porter  Dated: June 18, 2012

Ashley Rae Walker

# Exhibit # 1

Greg Guzman's  Business Card



**Exhibit # 2**

Pleading verified by Jack Azran, will be supplied by Allen Nochumson
at the June 18, evidentiary hearing

## IN THE SUPERIOR COURT OF PENNSYLVANIA

| | |
|---|---|
| Commerce Bank, N.A. | : |
|       Plaintiff/Appellee | :    713 EDA 2011 |
| | : |
|       v. | : |
| | : |
| Porterra, LLC | :    COURT OF COMMON PLEAS |
| | :    PHILADELPHIA COUNTY |
|       Defendant | :    February Term, 2007, No. 3257 |
| And | : |
| Debra Porter | : |
|       Appellant | : |
| And | : |
| Pardes Group, Inc. | : |
|       Intervenor/Appellee | : |

## APPELLEE, PARDES GROUP, INC'S, APPLICATION TO SUBSTITUTE PARTY AND TO QUASH APPEAL

Appellee, Pardes Group, Inc., by and through its counsel, Andrew L. Miller, Esquire, hereby applies to substitute party and to quash the instant appeal as moot, and in support thereof avers the following:

1.     Debra Porter ("Appellant") has appealed the denial of her petition to set aside sheriff's mortgage foreclosure sale of the real property located at 1039-1055 Frankford Avenue, Philadelphia, PA (the "Property").

2.     On September 9, 2010, a judgment in mortgage foreclosure was entered in favor of Plaintiff/Appellee, Commerce Bank, NA (the "Bank") and against the property owner, Porterra, LLC, in the amount of $5,364,322.96 and, on the same date, the Prothonotary issued a Writ of Execution to sell the Property at sheriff's sale on January 4, 2011 (the "Sheriff's Sale"). A true and correct copy of the trial court docket is attached hereto as Exhibit "A."

3.   Prior to the Sheriff's Sale, Appellant claimed to have a mortgage interest in the Property superior to the Bank's Mortgage.

4.   On December 14, 2010, Appellant petitioned to intervene in this matter and to postpone the Sheriff's Sale. Exhibit "A."

5.   Appellant's petition to intervene and to postpone the Sheriff's Sale was denied since, the Court found, *inter alia*, that "[Appellant] is judicially and collaterally estopped from claiming anything more than a subordinate mortgage on the property that is to be sold at sheriff's sale on January 4th." *See* the text of the Order dated December 29, 2010 in Exhibit "A."

6.   Appellant was never a party to the action below and was never granted leave to intervene therein. Exhibit "A."

7.   On January 4, 2011, Appellee, Pardes Group, Inc. ("Pardes"), was the successful bidder at the Sheriff's Sale with the high bid of $1,250,000.00. The Receipt from the Sheriff's Sale of the Property is attached hereto as Exhibit "B."

8.   On January 14, 2011, Appellant then filed a petition to set aside the sheriff's sale (the "Petition"). Exhibit "A."

9.   By Order dated February 8, 2011, and docketed on February 10, 2011, Judge Abramson denied the Petition to set aside sale. Exhibit "A."

10.   On March 2, 2011, Appellant filed the instant appeal from the denial of the Petition to set aside sale. Exhibit "A"

11.   Appellant never requested nor obtained a supersedeas. Exhibit "A". The docket of this appeal is attached hereto as Exhibit "C."

12.     On March 24, 2011, Pardes was granted leave to intervene. Exhibit "A."

13.     Pardes assigned its bid for the Property to Gibor Partners, LP, on May 25, 2011 and Gibor Partners, LP then paid the $1,125,000.00 balance of the purchase price to the sheriff on May 26, 2011.

14.     Gibor Partners, LP joins Pardes in this Petition and should be granted leave to replace Pardes Group, Inc. as a party to this appeal.

15.     On June 6, 2011, a sheriff's deed was given by the Sheriff of Philadelphia County to Gibor Partners, LP which was recorded with the Commissioner of Records, City of Philadelphia, at Doc Id: 52358672 on June 15, 2011 (the "Sheriff's Deed"). The Sheriff's Deed is attached hereto as Exhibit "D."

16.     Appellant cannot defeat the title of Gibor Partners, LP after the delivery of the sheriff's deed. Continental Bank v. Frank, 495 A.2d 565 (Pa. Super. 1985), Derr v. New York Joint Stock Land Bank, 6 A.2d 899 (Pa. 1939).

17.     Whatever "interest" Appellant had in the Property was divested by the mortgage foreclosure sale and she has no right to any distribution of the sheriff's fund from the sale, even if there is a surplus from the sale. Pennsylvania Co. for Ins. on Lives & Granting Annuities v. Broad Street Hospital, 47 A.2d 281, 283 (Pa. 1946), Pennsylvania Co. for Ins. on Lives & Granting Annuities v. Broad Street Hospital, 47 A.2d 281, 283 (Pa. 1946), Florida First Bon Capital Corp. v. Zoning Hearing Bd. Of Borough of Lansdale, 397 A.2d 838 (Pa. Commw. 1979) (The effect of a mortgage foreclosure sale divests the prior owner of any equitable or beneficial interest in the

property and also defeats all intervening estates and interests acquired subsequent

to the mortgage).  Emphasis supplied.

18.    "Generally, an actual claim or controversy must be present at all stages

of the judicial process for the case to be actionable or reviewable....If events occur to

eliminate the claim or controversy at any stage in the process, the case becomes

moot." J.S. v. Whetzel, 860 A.2d 1112, 1118 (Pa. Super. 2004)(citations omitted).  An

issue can become moot during the pendency of an appeal due to an intervening change

in the facts of the case or due to an intervening change in the applicable law  In re

Cain, 590 A.2d 291, 292 (Pa. 1991), Rivera v. Pennsylvania Dept. of Corrections, 837

A.2d 525, 527 (Pa. Super. 2003)(an issue before a court is moot if in ruling upon the

issue the court cannot enter an order that has any legal force or effect).

19.    The recording and delivery of the Sheriff's Deed renders the instant

appeal moot, and, the appeal should therefore be quashed.  Deutsche Bank National

Co. v. Butler, 868 A.2d 574 (Pa. Super. 2005); Jefferson Bank v. Newton Associates,

686 A.2d 834 (Pa. Super. 1996).

20.    Despite the fact that Appellant filed her appeal, she did not move to

delay delivery of the sheriff's deed.  Exhibits "A" and "C."

21.    Even though Judge Abramson struck the lis pendens filed by Appellant

against the Property, this appeal constitutes a cloud on title to the Property.

22.    The cloud on title created by the pendency of this litigation prevents

Gibor Partners, LP from financing the Property or otherwise conveying the Property

since no title company will insure against the risk of this litigation.

23. Appellant should not be allowed to destroy the marketability of title to the Property without posting a bond.

24. Appellant cannot be heard to set aside a completed sale where she did not delay delivery of the sheriff's deed.

25. This appeal should be quashed as moot.

26. In the alternative, pursuant to Pa.R.A.P. 1731-1735, Appellant should be required to post a bond in the sum of $1,875,000.00 ($1.25M x 1.5) to protect Gibor Partners, LP against the cost of this ongoing litigation which prevents Gibor Partners, LP from making use of the Property and to pay damages for the deprivation of its property.

WHEREFORE, Appellee, Pardes Group, Inc., respectfully prays that Gibor Partners, LP be substituted for Appellee, Pardes Group, Inc., and that the instant appeal be Quashed, or, in the alternative, that Appellant, Debra Porter, be required to post a bond in the sum of $1,875,000.00, together with such other and further relief as this Court deems just.

Respectfully Submitted,

ANDREW L. MILLER & ASSOCIATES, P.C.

By: _____
    Andrew L. Miller, Esquire
    Attorney for Pardes Group, Inc.
    and Gibor Partners, LP
    Attorney I.D. No. 55994
    15 St. Asaph's Road
    Bala Cynwyd, PA 19004
    Tele. No. 610-617-1776

## VERIFICATION

Jack Azran, Vice President of Pardes Group, Inc., says that the facts and information set forth in the foregoing Motion to Substitute Party and to Quash Appeal are true and correct to the best of his knowledge, information and belief and that this Verification is made in accordance with the provisions of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities.

Date: _7-7-11_____

_____
Jack Azran, Vice President, Pardes
Group, Inc.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 2nd day of July, 2012, a true and correct copy of Plaintiff's Response in Opposition to Intervenor's Motion for Summary Judgment and related papers thereto were filed electronically on an even date herewith, are available for viewing and downloading from the ECF system, and have been served electronically and via U.S. first-class mail on an even date herewith upon the following:

Andrew L. Miller, Esquire
Andrew L. Miller & Associates
15 St. Asaph's Road
Bala Cynwyd, PA 19004

*Attorneys for Intervenor Pardes Group, Inc.*

Robert H. Nemeroff, Esquire
Friedman, Schuman, Applebaum, Nemeroff & McCaffery, P.C.
101 Greenwood Avenue
Fifth Floor
Jenkintown, PA 19046

*Attorney for Defendant*

/s/ Alan Nochumson
ALAN NOCHUMSON

Dated:  July 2, 2012