IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | : | |
|---|---|---|
| DEBRA PORTER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 10-7243 |
| | : | |
| TD BANK, N.A., *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM**

YOHN, J.                                                                                       August 27, 2012

      Plaintiff, Debra Porter, sues defendant, TD Bank, N.A. ("TD Bank"),[1] seeking a judicial declaration that she holds a mortgage that has priority over TD Bank's mortgage on certain real property. A failed business venture to develop the property has spawned extensive litigation in Pennsylvania state court in addition to this federal action. TD Bank and Pardes Group, Inc. ("Pardes"), which intervened as a defendant in this matter, argue that plaintiff is collaterally estopped from claiming priority over TD Bank's mortgage by virtue of the state-court litigation. Defendants seek summary judgment under Federal Rule of Civil Procedure 56 on this basis. For the reasons set forth below, I will grant defendants' motion.

---

      [1] Commerce Bank, N.A. was the entity directly involved in the events underlying this action; TD Bank is the successor to Commerce Bank, N.A. For simplicity, I refer solely to TD Bank.

I.      **Factual Background and Procedural History**[2]

   A.   **Factual Background**[3]

Plaintiff and her husband, James Porter, owned property at 1039-55 Frankford Avenue, Philadelphia, Pennsylvania (the "Property"). (Am. Compl. ¶ 6.) James Porter and Nunzio Terra, who is not a party to this federal action, formed Porterra, LLC ("Porterra"), in order to develop the Property and another neighboring parcel of land (the "Development Project") owned by Nunzio Terra and his wife, Laura Terra. (*Id*. at ¶¶ 6-7; Pardes Group, Inc.'s Mot. for Summ. J. ("Summ. J. Mot.") Ex. B at 2; Pardes Group, Inc.'s Br. in Supp. of Mot. for Summ. J. ("Pardes Br.") at 2.) Nunzio Terra and James Porter, the only members of Porterra, executed a Joint Venture Agreement (the "JVA") on July 20, 2005, in which each agreed to contribute their

---

[2]As a preliminary matter, I must note that defendants have failed to comply with the procedures established in the March 15, 2011, scheduling order. The order clearly states that:

> In addition to a brief, any party filing a motion for summary judgment or partial summary judgment shall file a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the party contends there is no genuine issue to be tried. The party must support each of the material facts with specific citations to the underlying record, and attach a copy of the relevant portions of that record, if practicable and not already of record. Failure to submit such a statement of material facts with citations may constitute ground for denial of the motion.

(Doc. No. 19 at 2.) Defendants did not file a statement of undisputed facts. Defendants' omission makes it exceedingly difficult to decipher which facts alleged by plaintiff they dispute and which facts they accept—a task made all the more challenging by defendants' inclusion of over 900 pages of exhibits.
   The order warns that failure to include a statement of undisputed facts may constitute grounds for denial of defendants' motion. Nevertheless, because the conclusive issue in this motion is one of collateral estoppel and thus my analysis focuses on the procedural history of the related state-court litigation, which is undisputed, I will not impose that sanction here.

[3] Except as otherwise noted, the following facts are undisputed.

2

respective parcels of land to Porterra. (Am. Compl. ¶ 8; Summ. J. Mot. Ex. B at 2; *id*. Ex. P at 15-24.) Nunzio Terra, however, never transferred his land to Porterra. (Summ. J. Mot. Ex. B at 2.)

According to plaintiff, James Porter signed a deed transferring the Property to Porterra on May 20, 2005. (*Id*. at 2 n.2; Am. Compl. ¶ 9; *id*. Ex. A.) However, plaintiff claims that she refused to sign the deed until she was granted a mortgage on the Property. (Am. Compl. ¶ 10; Summ. J. Mot. Ex. B at 2 n.2.) She maintains that Porterra acquiesced to her demands, so she executed the deed and received a mortgage on the Property securing a note for $2,800,000 from Porterra ("plaintiff's mortgage") on July 20, 2005, the same day the JVA was executed. (Am. Compl. ¶¶ 10-13;  Summ. J. Mot. Ex. B at 3.) Plaintiff claims that she entrusted the original copy of her mortgage to United Land Transfer, LLC ("ULT"), a title company that handled the closing, for recording and that she retained a copy for herself. (Am. Compl. ¶ 15; Summ. J. Mot. Ex. B at 3.) Unbeknownst to plaintiff, ULT was owned and operated by Nunzio Terra at the time and the title company never recorded her mortgage.[4] (Am. Compl. ¶ 14; Summ. J. Mot. Ex. B at 3.)

TD Bank agreed to provide financing for the Development Project, but upon discovering plaintiff's mortgage it requested that plaintiff sign a subordination agreement allowing TD Bank to assume a senior lien position. (Am. Compl. ¶¶ 16-17; *id*. Ex. D; Summ. J. Mot. Ex. B at 3; Pardes Br. at 2.) Plaintiff never signed the subordination agreement but Nunzio Terra, acting for Porterra, obtained a construction loan for $5,860,000 from TD Bank on August 24, 2005. (Am. Compl. ¶¶ 18-19; Summ. J. Mot. Ex. B at 3; Pardes Br. at 2.) The loan is secured by an "Open-

---

[4] While it is not entirely clear from the papers submitted by defendants, it appears that defendants dispute all of the alleged facts contained in this paragraph.

End Mortgage and Security Agreement"[5] ("TD Bank's mortgage") on the Property that was recorded on August 25, 2005.[6] (Am. Compl. ¶ 14; *id*. Ex. E; Summ. J. Mot. Ex. B at 3; Pardes Br. at 2.)

The Development Project ultimately failed, leading to several state-court actions and this federal action. (Am. Compl. ¶ 23.)

B.  **Procedural History**

i.  **The Porterra Action**

On July 17, 2006, plaintiff and her husband brought a legal action (the "Porterra Action") against Porterra, Nunzio Terra, Laura Terra, ULT, and others in the Philadelphia Court of Common Pleas. (*Id.* ¶ 23; Summ. J. Mot. Ex. B at 3-4; *id*. Ex. I at 5-6.) In the Porterra Action, plaintiff and her husband sought, *inter alia*, to have plaintiff's mortgage recorded, or alternatively, money damages for the deprivation of plaintiff's security interest in the Property. (Am. Compl. ¶ 24; Summ. J. Mot. Ex. H at 42, 48-49.)

Plaintiff and her husband did not initially name TD Bank as a defendant in the Porterra Action. (Am. Compl. ¶ 25.) TD Bank, however, intervened in the action for limited purposes on January 8, 2008. (*Id*. ¶ 26; Summ. J. Mot. Ex. I at 22.) On November 16, 2009, plaintiff and her husband moved to join TD Bank as a defendant in the Porterra Action, but their motion was

---

[5] Plaintiff alleges that ULT administered the closing of the loan and provided TD Bank with title insurance on the Property. (Am. Compl. ¶ 20.) Therefore, plaintiff maintains that TD Bank was aware of Nunzio Terra's involvement in ULT. (*Id*. ¶ 21.)

[6] A mortgage on the Property for $2,800,000 in favor of plaintiff was recorded on January 7, 2007. (Summ. J. Mot. Ex. B at 4.) Plaintiff maintains that Nunzio Terra executed and recorded this mortgage without her knowledge or consent. (*Id*.) The mortgage was eventually stricken by the state court. (*Id*.)

denied as untimely by order of the state court dated December 10, 2009, because it was made more than three years after the commencement of the suit and after discovery had concluded. (Summ. J. Mot. Ex. I at 44-45.)

On December 23, 2009, the Court of Common Pleas ordered that default judgments be entered against Porterra, ULT, and two other defendants in the Porterra Action. (*Id*. at 47.) After a damages hearing on January 11, 2010, the Court of Common Pleas awarded damages of $3,696,001 in favor of plaintiff and her husband. (*Id*. at 50; Am. Compl ¶ 44.) Plaintiff and her husband did not appeal this damages award or the failure of the court to act on their request for the court to order that the mortgage be recorded. (Summ. J. Mot. Ex. I.)

   ii.  The Foreclosure Action

On February 28, 2007, TD Bank initiated a foreclosure action (the "Foreclosure Action") with respect to the Property in the Philadelphia Court of Common Pleas. (Am. Compl. ¶ 34; Summ. J. Mot. Ex. G at 5.) Plaintiff was not a party to the Foreclosure Action. (Am. Compl. ¶ 35; Summ. J. Mot. Ex. B at 1.) Nevertheless, on April 13, 2007, the court consolidated the Foreclosure Action and the Porterra Action for discovery and notice purposes on motion by plaintiff and her husband. (Summ. J. Mot. Ex. B at 5; *id*. Ex. G at 5-6; Pardes Br. at 2-3.)

On June 9, 2009, the court entered a judgment in foreclosure with respect to the Property. (Summ. J. Mot. Ex. G at 22; Pardes Br. at 4.) And the court entered judgment in favor of TD Bank and against Porterra in the amount of $5,364,322.96 on or about September 9, 2009. (Am. Compl. ¶ 43; Summ. J. Mot. Ex. G at 22; Pardes Br. at 4.) A sheriff's sale of the Property was scheduled for January 4, 2011. (Am. Compl. ¶ 46.)

On December 14, 2010, more than a year after entry of the foreclosure judgment and after

the sheriff's sale had been noticed, plaintiff moved to postpone the sheriff's sale. (Am. Compl. ¶ 49; Summ. J. Mot. Ex. B at 4; *id*. Ex G. at 24; Pardes Br. at 4.) The next day, December 15, 2010, the Court of Common Pleas denied the motion to stay because plaintiff was not a party to the Foreclosure Action. (Am. Compl. ¶ 50; Summ. J. Mot. Ex. B at 6; *id*. Ex. G at 23; Pardes Br. at 4.)

Following the denial of her motion to stay, plaintiff filed a motion for reconsideration and for leave to intervene in the Foreclosure Action on December 15, 2010. (Am. Compl. ¶ 51; Summ. J. Mot. Ex. B at 6; *id*. Ex. G at 22; Pardes Br. at 4.) On December 29, 2010, the Court of Common Pleas denied that motion stating that "[plaintiff] is judicially and collaterally estopped from claiming anything more than a subordinate mortgage on the [P]roperty . . . . The [TD Bank] mortgage, which was the subject of this foreclosure action, has priority over her claimed lien." (Am. Compl. ¶ 57; Summ. J. Mot. Ex. B at 6; *id*. Ex. G at 26; Pardes Br. at 5.)

Plaintiff filed a motion to reconsider the denial of her reconsideration motion on January 3, 2011, which the court denied on January 6, 2011. (Summ. J. Mot. Ex. B at 6; *id*. Ex. G at 27; Pardes Br. at 5.)

The Property was sold by sheriff's sale for $1,250,000 on January 4, 2011. (Am. Compl. ¶ 65; Pardes Br. at 2.) Pardes initially purchased the Property, but later assigned its bid to a third party. (Pardes Br. at 2.) Plaintiff then filed a motion to set aside the sheriff's sale on January 14, 2011, (Summ. J. Mot. Ex. G at 27), which the court denied on February 8, 2011, (*id*. at 28).

Plaintiff appealed the denial of her motion to stay the sheriff's sale. (Summ. J. Mot. Ex. B at 1.) On April 10, 2012, the Superior Court of Pennsylvania issued a non-precedential decision affirming the Court of Common Pleas. (*Id*.) In the decision, the Superior Court concluded that "a

common claim arose in the [Porterra] Action and [the Foreclosure Action]—[Mrs. Porter's] alleged priority interest in the [P]roperty arising from [her mortgage]." (*Id*. at 12.) The court noted that "[t]here was a final judgment on the merits in the [Porterra] Action, and [TD Bank] had intervened in that matter" and that "[Mrs. Porter] had a full and fair opportunity to litigate this issue in the prior adjudication." (*Id*. at 12.) Therefore, the Superior Court "agree[d] with the trial court that [Mrs. Porter] is collaterally estopped from arguing that her unrecorded mortgage of July 20, 2005, has a priority position over [TD Bank's] August 25, 2005[,] loan." (*Id*. at 12-13.) Plaintiff did not petition the Supreme Court of Pennsylvania for allowance of appeal.

### iii. Federal Action

Plaintiff commenced this declaratory-judgment action on December 12, 2010. She seeks a declaration that her mortgage on the Property has priority status over TD Bank's mortgage on the Property. Pardes filed a motion for summary judgment on May 21, 2012, and TD Bank joined in that motion on June 14, 2012.

## II. Standard of Review

A motion for summary judgment will be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 743 (3d Cir. 1996). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l*

*Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

**III.    Discussion**

Defendants argue that the doctrine of collateral estoppel, or issue preclusion, bars plaintiff's claim that her mortgage on the Property has priority over TD Bank's mortgage. "Collateral estoppel operates to bar 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination.'" *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001)). The Full Faith and Credit Act, 28 U.S.C. § 1738, requires that state-court decisions be given the same preclusive effect in federal court as they would be given in courts of the rendering state.

In particular, defendants urge me to give preclusive effect to the April 10, 2012 decision of the Superior Court of Pennsylvania. In that decision, the Superior Court held that "[Mrs. Porter] is collaterally estopped from arguing that her unrecorded mortgage of July 20, 2005, has a priority position over [TD Bank's] August 25, 2005 loan." (Summ. J. Mot. Ex. B at 12-13.) In essence, defendants argue that the state court's preclusion determination is itself preclusive.

While this application of state-court preclusion principles to a state court's decision applying these very same principles may be unusual, it is not entirely unprecedented. In *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518 (1986) the United States Supreme Court addressed the effect of a state court's preclusion determination in a related federal-court action. In that case, Parsons Steel sued a bank concurrently in state and federal court. *Id*. at 520. In the federal action, which was tried first, the district court granted a judgment n.o.v. to the bank. *Id*. The bank then pled the defenses of res judicata and collateral estoppel in the state-court action.

*Id*. The state court rejected the res judicata argument and Parsons Steel obtained a jury verdict against the bank in the state action. *Id*. Instead of appealing the state court's determination with respect to res judicata, the bank sought injunctive relief against Parsons Steel in federal court. *Id*. at 520-21. Ignoring the state court's preclusion ruling, the district court concluded that res judicata should apply and enjoined Parsons Steel from further prosecuting the state action under the Anti-Injunction Act, 28 U.S.C. § 2283. *Id*.

On appeal, the Supreme Court concluded that "the Full Faith and Credit Act requires that federal courts give the state-court judgment, and particularly the state court's resolution of the res judicata issue, the same preclusive effect it would have had in another court of the same State. Challenges to the correctness of a state court's determination as to the conclusive effect of a federal judgment must be pursued by way of appeal through the state-court system and certiorari from this Court." *Id*. at 525. Thus, the Court remanded the case to the district court to determine whether under state law "the state-court judgment [of res judicata] is . . . entitled to preclusive effect." *Id*. at 526.

Although *Parsons Steel* involved res judicata rather than collateral estoppel, it is nevertheless instructive. Following this approach, I will not consider whether the Superior Court was correct in concluding that plaintiff is "collaterally estopped from arguing [that] she holds a priority mortgage." (*Id*. at 10.) Instead, I must consider only whether another Pennsylvania state court would afford collateral-estoppel effect to the Superior Court's judgment of collateral estoppel. For that, I turn to Pennsylvania law.

Under Pennsylvania law, collateral estoppel applies if (1) the issue decided in the prior action is identical to the one presented in the later action; (2) there was a final judgment on the

9

merits in the prior action; (3) the party against whom collateral estoppel is asserted was a party to, or is in privity with a party to, the prior action; and (4) the party against whom the collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.[7] *See Nationwide Mut. Fire Ins.*, 571 F.3d at 310 (citing *Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998)).

First, the issue decided by the Superior Court is identical to the issue raised by defendants' motion for summary judgment. Here, plaintiff seeks only a declaration that her mortgage has priority status over TD Bank's mortgage. (Am. Compl. at 10.) The issue currently before me is whether plaintiff is precluded from claiming such priority status. This is precisely the issue addressed by the Superior Court's decision, which held that "[Mrs. Porter] is collaterally estopped from arguing that her unrecorded mortgage of July 20, 2005, has a priority position over [TD Bank's] August 25, 2005 loan." (Summ. J. Mot. Ex. B at 12-13.) So, the first element of Pennsylvania's collateral-estoppel inquiry is satisfied.

Second, the Superior Court's April 10, 2012 memorandum decision is a final judgment on the merits for preclusion purposes even though it is non-precedential. Pa. Super. Ct. Internal Operating P. § 65.37(A) ("An unpublished memorandum decision . . . may be relied upon or cited (1) when it is relevant under the doctrine of law of the case, res judicata, or collateral estoppel."); *Allen v. Pa. SPCA*, 488 F. Supp. 2d 450, 466 (M.D. Pa. 2007) ("The superior court issued its ruling . . . in an unpublished memorandum decision. Such decisions may be relied

---

[7] As the Third Circuit has noted, "Pennsylvania courts will occasionally frame the test as a five-factor test, adding the requirement that 'the determination in the prior proceeding was essential to the judgment.'" *Nationwide Mut. Fire Ins.*, 571 F.3d at 310 n.12 (quoting *Yamulla Trucking & Excavating Co. v. Justofin*, 771 A.2d 782, 786 (Pa. Super. Ct. 2001)).

upon or cited when relevant for preclusion purposes.")

Third, although plaintiff was not a party to the underlying Foreclosure Action, she was a party to the appeal—in fact, she was the sole appellant. As a party to the Superior Court's decision, plaintiff can fairly be bound by the court's collateral-estoppel determination and plaintiff does not argue otherwise.

Finally, plaintiff was represented by counsel on appeal (Summ. J. Mot. Ex. B at 7), and the Superior Court heard argument from counsel on February 15, 2012, (Pardes Br. at 14). Plaintiff had a full and fair opportunity to litigate the collateral-estoppel issue in the Superior Court.

Because I must accord the Superior Court's April 10, 2012 decision the same preclusive effect that it would be given by Pennsylvania courts and because the Superior Court determined that plaintiff is precluded from arguing that her mortgage has priority over TD Bank's mortgage, collateral estoppel bars plaintiff's claim here.

## IV. Conclusion

For the reasons explained above, I will grant defendants' motion for summary judgment.[8]

---

[8] Defendants also request a declaration that "Gibor Partners, L.P.'s title to the real property located at 1039-1055 Frankford Avenue, Philadelphia, PA, is free and clear of any claim, lien, interest[,] or mortgage of [p]laintiff, Debra Porter." (Pardes Br. at 1.) Such relief is inappropriate because it is beyond the scope of the relief requested by plaintiff or Pardes, (Intervenor, Pardes Group, Inc.'s Answer to Am. Compl. at 11 (demanding "that the [p]laintiff's alleged [f]irst [m]ortgage be declared to be subordinate to [TD Bank's] [s]econd [m]ortgage")), and because Gibor Partners, L.P. is no longer a party to this case. *See Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 498-500 (3d Cir. 2002) (concluding that the district court erred by granting declaratory relief to the defendants on an issue outside the scope of the relief requested in the plaintiff's declaratory-judgment action where the defendants had not made a counterclaim, the defendants' answer did not request such a declaration, the notice required by statute had not been given, and the statutorily required hearing had not been conducted).

An appropriate order accompanies this memorandum.