IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| Debra Porter | : | CIVIL ACTION |
|---|---|---|
| Plaintiff | : | |
| v. | : | No. 10-CV-07243 |

T.D. Bank N.A. et al

Defendant

## ORDER

AND NOW, this _____ day of _____ _____, 2012, upon consideration

of the MOTION FOR RECONSIDERATION AND TO AMEND THE COMPLAINT

OR GRANT A SUMMARY JUDGMENT FOR DAMAGES AGAINST T.D. BANK

UNDER RULE 56 (F) thereon, it is ORDERED and DECREED that said Motion is

_____and it is further ORDERED and DECREED that a

Jury Trial will be granted on the Summary for Damages against T.D.Bank and a Trial

Order will follow with this order.

BY THE COURT:

_____

J.

## Certificate of Service

I Debra A. Porter hereby certify that on this 7th day of September 2012 a true and

correct copy of the Motion for Reconsideration and to Amended the Complaint and grant

a summary judgment for damages against T.D. Bank under Federal Rule 56 (f) with

Exhibits 1 thru 12 was served in the manner set forth below upon the following:

Via U.S. First- Class Mail

Allen Nochumson Esquire
Nochumson P.C.
1616 Walnut Street
Suite 1819
Phialdelphia, Pennsylvania, 19103

Robert H. Nemeroff, Esquire
101 Greenwood Avenue
Fifth Floor
Jenkintown, PA. 19046

Andrew L. Miller Esquire
Andrew L. Miller & Associates
15 St. Asaph's Road
Bala Cynwyd, PA. 19004

Faxed Motion only
The Honorable Judge William H. Yohn Jr.
United States District Judge
14613 United States Courthouse
Sixth and Market St
Philadelphia, PA. 19106-1753

Via Overnight Mail
U.S. District Court Clerks Office
Room 2609
601 Market St.
Philadelphia, PA. 19106

/s/ Debra a Por

Debra A. Porter

Dated: September 7, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Debra Porter | : | CIVIL ACTION |
|     Plaintiff | : | |
|     v. | : | No. 10-CV-07243 |
| T.D. Bank N.A. et al | | |
|     Defendant | | |

## Motion for Reconsideration and to Amended the Complaint and grant a summary judgment for damages against T.D.Bank under Federal Rule 56(f)

Debra Porter (Mrs. Porter) on behalf of myself hereby moves this court to Reconsider the Motion for Summary Judgment granted to the Intervenor and the Bank on August 27, 2012 in the alternative amend my complaint and grant summary judgment as to damages against T.D. Bank for the failure to record my July 20, 2005 first place purchase money mortgage. For the reasons set forth herein the Motion for Reconsideration should be granted and based on the "undisputed material facts" as well as the evidence submitted within this Motion, Plaintiff shall be granted the right to amend her complaint and under Federal Rule 56(f) a summary judgment for damages against T.D. Bank is granted with the amount of the Damages being determined by a Jury Trial.

### Facts

**1.** This action arises from Mrs. Porter seeking a Declaratory Judgment as to the priority of her (unperfected) first place purchase money mortgage signed and notarized on July 20, 2005 by the members of Porterra LLC in exchange for her signature to a Deed dated July 20, 2005 for her property known as 1039-55 Frankford Ave. Philadelphia PA. 19125 ("subject property")

2. Mrs. Porter's counsel has refused to represent her best interest since April 16 2012 evident by document #56 Motion to Withdraw and by Plaintiffs subsequent actions or lack thereof before the State Court and this Federal Court.

3. On May 8, 2012 This Honorable Court ordered an evidentiary hearing scheduled for June 18, 2012 to address Document #56 Motion to Withdraw filed by Plaintiffs Attorney.

4. In the May 8, 2012 Order (Exhibit #1) The court states "and Plaintiff alleging that counsel has received a fee of $34,000 thus far so that a refund of a portion of the fee may be due if counsel is allowed to withdraw and neither counsel nor the plaintiff having

addressed the impact of the Superior Court decision dated April 10, 2012 which may have a substantial impact on plaintiff's case."

5. During the evidentiary hearing, This Court asked Plaintiffs Attorney as to why he wanted to withdraw? (The Record is currently sealed so I am doing this from memory*)

- Mr Nochumson: She owes me $70,000 dollars and she has not paid me anything since December.

- The Court: Did you receive a bill for $70,000,

- Mrs. Porter: No.

- The Court: Did you send her a bill?

- Mr Nochumson: No

- The Court: According to what I read in the motion for opposition I thought you agreed to cap your fees at $50,000.

- Mr. Nochumson: I did your Honor.

- The Court: You cannot say she owes you $70,000 when you agreed to cap your fees at $50,000.

- Mr Nochumson: Well she only paid me $25,000.

- Mrs. Porter: No your Honor I paid him $30,000.

- Mr. Nochumson: Well she could have paid me $30,000 I don't have all the paperwork here.

- The Court: Mr. Nochumson is there any other reason why you wanted to withdraw.

- Mr Nochumson: No your Honor

- Mrs Porter: Your Honor Is it true your insurance can go up because someone threatened to sue you, because Mr. Nochmson told me that Andrew Miller threatened to sue him and that his insurance is going to go up because of my case. This is the real reason why he wants to withdraw.

- The Court: Is that true Mr. Nochumson?

- Mr. Nochumson: Yes your Honor.

- Mrs Porter: Here is the evidence (as I am pointing to the paperwork on the table) as to the Bank knowing about my mortgage it seems nobody wants to hear the evidence

- The Court: Well we don't need that right now.

- Mrs Porter: Nobody wants to hear the evidence or what I have to say, there has not been any depositions or discovery taken.

- The Court: Well apparently you spoke at the Sheriff Sale.

- Mrs. Porter: No, your Honor that was my husband, Mr. Nochumson E-mailed my husband what to say and told him on the phone to stand up at the Sheriff Sale and make an announcement about the property being in litigation.

- Mrs. Porter: Why didn't my Attorney (I wanted to ask a Judge a question and I was about to cry because I couldn't think of the term and then it came to me,) Appeal?

- The Court: Your Attorney knows what's best for your case and you should listen to his counsel.

- The Court: You have two options you can pay your Attorney the $20,000 or you can get a new Attorney and I will give you 45 days to get a new Attorney. If you keep your Attorney you have ten days to pay him the $20,000. I assume you are going to talk to your husband.

- Mr Nochumson: He actually listened to me and did not appear today

- Mrs Porter: Can my Husband represent me.

- The Court: No, he can not sit next to you, He can help you write the pleadings.

- Mrs. Porter: Yes, your Honor, I need to speak to my Husband

- **(at this point a half hour break had taken place, a minute before the Judge returned I leaned towards my Attorney and said "That is Jack Azran the man in the yellow shirt he was the one at the Sheriff Sale who said he knew about my mortgage." My Attorney said "I know who he is." If the room is being recorded like the audio disc I purchased after the 6-18-12 hearing for the 6-11-12 hearing then you will hear the above statement about Jack Azran. In addition to today's hearing (6-18-12) the Judge also acknowledges**

**during the 6-11-12 hearing that I was not treated to a fair hearing in the State Court.)\***

- The Court: The only thing I see here (motion opposing summary judgment) is the date was changed

- Mrs. Porter: No your Honor there were some changes made (on the Motion opposing Summary Judgment). I filed it this morning because it was due today and my attorney did not want to meet me this morning. He said he did not want to meet the 11th hour to make my changes yet just before this hearing he wanted to meet me to review some changes he made.

- The Court: So you were coming from out of town and wanted to meet your lawyer this morning and since he refused to meet you filed the Motion

- Mrs. Porter: Yes your, Honor.

- The Court: Well I am going to strike this you attorney will have fourteen days to respond from this order and opposing counsel will have seven days thereafter.

- The Court: I can not overrule the Superior Court's Ruling to not set aside the Sheriff Sale, but I know you were not dealt with fairly.

- Mr Nochumson: She has a valid case your Honor.

- Mr Nochumson: Your Honor Can I read something to you.

- The Court: No

- Mrs Porter: Can I read something to you

- The Court: Sure

- Mrs Porter: (reading from an E-mail from Mr. Nochumson dated March 24, 2011) The scope of our representation is limited to the pending federal court action as well as any appeals taken thereto; the pending appeals in state court regarding the Sheriff's Sale which took place; and a mortgage foreclosure against Porterra LLC should the pending federal lawsuit find that Debra's mortgage so possesses lien priority status. (Note the Plaintiffs Attorney never appealed the superior court ruling of April 10, 2012 nor did he address it at this evidentiary hearing)

- Mr Nochumson: That was what I was going to read

- Mrs Porter: Your Honor can I pay him $5,000 per month for the next four months

- The Court: Why do you want to do that?

- Mrs. Porter: Because I want to make sure he takes it to the end in Federal Court

- The Court: You are in Federal Court

- Mrs. Porter: I know, I want him to take me to the end meaning our trial in November

- The Court: Well there might not be a trial I might rule by Summary Judgments

- The Court: I am going to seal the record bring opposing counsel in so I can tell them what we are going to do.

\* The meeting before the break lasted forty- five minutes and the meeting after the break was thirty minutes long, unfortunately I can not remember everything or the exact order. I did the best I could under the circumstances.

6. Plaintiffs Attorney received the check for $20,000 within the ten days as required by the Court. When he re-filed the motion opposing the motion for Summary Judgment, I later noticed he never incorporated my changes or any of the exhibits which were attached to the motion opposing summary judgment submitted June 18, 2012 and stricken by this court. In fact when my husband and I wanted him to include the last sentence from the amended complaint and make it part of his suggested order he then told my Husband to get out of his office or he is going to call the police. The last sentence of the amended complaint states "Ms. Porter requests that this Court enter judgment in her favor by declaring the First Mortgage has priority status over the Second Mortgage and awarding such further relief which it deems proper and just under the circumstances." I was unaware at the time a Judge is allowed to award a Summary Judgment for Damages under Federal Rule 56 (f) with the amount being determined by a Jury Trial. This is what I want this Honorable Court to do.

6a Even this Honorable Court acknowledge this issue should be addressed in the October 20, 2011 Motion to Dismiss Hearing on page 89 and 90

    Mr Miller: Will your Honor delay the start of discovery until a resolution of this next motion?

    The Court: Well, I might as to you, but why can't they go ahead and start with T.D. Bank

    Mr. Miller: Well, it may be moot—

    The Court: Ah, no, no, I don't think so—

    Mr Miller –if –if—

The Court—because there would still be a claim against T.D. Bank that T.D.
Bank had actual notice of the mortgage and that they were in
cohorts with Mr. Terra to not record her first mortgage (the word
record is not actually written in the transcript, However when you
listen to the audio the Judge does say the word "record" and not the
word "require")

Mr. Miller: Well, but where does that lead, if—if I prevail on my motion, my
client gets title free and clear, the—

The Court:  Your client does.

Mr. Miller:  Right

The Court:  Yes

6B. Plaintiffs Attorney sends second request for production of Documents to Banks
Attorney March 22, 2012, Discovery Deadline is August 15, 2012 (Exhibit X) Plaintiffs
Attorney does nothing to pursue the Bank in producing the documents requested. On
August 15, 2012 Plaintiff Attorney sends letter to Judge requesting 60 days for
discovery. (Exhibit X-1)

7.  The exhibits enclosed by my Motion opposing Summary Judgment which were
stricken by this court on June 18, 2012 Document #77( Exhibits filed in Hard Copy)
I want to be included in this Motion, which prove the Bank and the Banks Counsel
had knowledge of my mortgage prior to the construction loan.  In addition to the
Subordination and Standstill Agreement prepared by the Bank with the Banks
identifier in the bottom left corner (Exhibit A-3), and the 28 releases prepared by the
Bank with the Banks identifiers in the bottom left, the following prove the Bank
knew about my mortgage prior to the construction loan and were in cohorts with Mr.
Terra's Title Company, ( Nunzio Terra by way of deposition claims his Attorney
was still part owner of United Land Transfer as of August 24, 2005.)  To List a few

The E-mails from the Banks Attorney to Nunzio Terra's Attorney stating "
"Finally I also left you a message regarding needing the Subordination and
Mortgage Releases delivered to closing-even if it delays closing by a couple of
days." Exhibit B-4

E-mails from Banks Attorney to Nunzio Terra's Attorney with the Banks Loan
Officer copied "The following are still missing and must be delivered at closing
1- the releases for the property 2- the Subordination Agreement…"Exhibit B-5

E-mails from Terra's Attorney to the Banks Attorney with the Loan Officer being Copied stating "Dave, Attached are the Note/Mortgages from Porterra LLC to Debra Porter and Laura Terra respectively," Exhibit B-2

UCC Finacing Statement filed July 7, 2005 proving the Bank having a secured interest in United Land Transfer. I am sure once we get discovery from the Bank with copies of the financial statements submitted by the Terra's one of the Terras assets will be United Land Transfer –hence the reason for the July 7 UCC Finacing Statement Exhibit Q-2

The Settlement sheet at the August 24, 2005 Construction Loan Closing signed by the United Land Transfer Agent and Nunzio Terra. The Title Agents signature is the same agent who notarized my July 20, 2005 mortgage. The same person who received the original mortgage on July 20, 2005 to be recorded. Exhibit R-1

The Deposition taken of Attorney for the Bank David Nasatir and Loan Officer for the Bank Joe Rago by my husband with both of them claiming they did not know about the Joint Venture Agreement at the time of the construction loan on August 24, 2005. My Attorney has my husband's last two copies of their depositions and he refuses to give me the file. Including the file submitted to the Superior Court to compare what was produced to what was in his possession.

The December 19, 2006 Default Letter stating the Bank did not know about the Joint Venture Agreement. One must ask themselves, since the Bank did not know about the Joint Venture Agreement (which I was not a party too) why is the Bank preparing a Subordination and Standstill Agreement and 28 release for my signature and wants to delay closing until receiving my signature on Documents prepared by the Bank? Exhibit F-1

Documents sent by Ups to the Loan Officer and the Bank from United Land Transfer July 23, 2005 Exhibit T-2

**8.** On September 9, 2010 (case #070203257 ) the state court entered a judgment in favor of TD Bank and against Porterra in the amount of $5,364,322.96 (This Honorable Court in their memorandum for motion for Summary judgment Document #85/86 incorrectly states on page 5 of the memorandum the Date being September 9, 2009. Due to the incorrect year the beginning of the last paragraph on page 5 of the memorandum is incorrectly stated when it says "On December 14, 2010 more than a year after entry of the foreclosure judgment and after the sheriff sale had been noticed, plaintiff moves to postpone the sheriff sale.") Memorandum page 5

9. On or about September 14, 2010 Mrs. Porter's husband approaches the Sheriff Department to inquire as to what the September 9, 2010 state court judgment meant. The solicitor (Ed Chew) for the Sheriff Department told Mrs. Porter's husband that the

property can go up for Sheriff Sale.  Mr. Chew advised Mrs. Porter's husband to get an
Attorney.  Mr. Ed Chew advised Mrs. Porter's husband to use Allen Nochumson because
"he is well versed with Sheriff Sales"

   **10.**  On September 17, 2010 less than eight days after the state court entered a
judgment in favor of TD Bank and against Porterra LLC, Mr. and Mrs. Porter hired Alan
Nochumson Esquire and his firm Nochumson PC.

   11. After reviewing the facts of the case Mr. Nochumson told Mrs. Porter he can only
represent Mrs. Porter with respect to her mortgage claims since the state court never
addressed the issue of her mortgage or its priority.

   11a. Even this Honorable Court on October 20, 2011 at the three separate Motion to
Dismiss hearings (Collateral Estoppel, Judicial Estoppel and the Rooker Feldman
Doctrine) acknowledge the state court never addressed the issue of priority of Mrs.
Porter's mortgage. (page 19 and 20 of ~~Exhibit 3~~ Document #41)

>   The Court: I mean, I need specifics and I'm having—I had a lot of trouble
>              trying to unravel this.
>
>   Ms. Sadd:  It's very, very complicated, your Honor, there is no doubt about
>              That.  My argument is based on Judge Abramson' order—
>              orders— In <u>Porter versus Terra</u>
>
>   The Court: Yeah.  And the problem with those orders is that—it's just a
>              conclusion.  I mean, I don't have any basis—I don't have any
>              factual basis—setting out why he decided what he decided.
>
>   Ms. Sadd:  That's true, your –your Honor, there aren't I don't know that
>              there were many factual determinations by Judge Abramson.
>
>   The Court: Yeah.
>
>   Ms. Sadd:  But what we do know is that—
>
>   The Court: Well, then, how can I assume that he based his order on
>              particular things?  I—I saw nothing anywhere that ever
>              addressed the priority of the mortgage.
>
>   Ms Sadd:   Nothing addressed the priority of the mortgage your Honor.

Subsequently, this Honorable Court denied the motion to dismiss on the grounds of
Collatteral, Juducial and the Rooker Feldman Doctrine.

12. After four affidavits of Service September 20, 2010 November 15, 2010, November

18, 2010 and November 24, 2010 plaintiffs Attorney enters his appearance in the State
Court Foreclosure and Files a complaint in Federal Court December 15, 2010. This is
two weeks prior to the scheduled Sheriff Sale of January 4, 2011 and three months after I
hired him

13. January 3, 2011 the day before the sheriff sale Mr. Nochumson files a Lis Pendens
in State Court and writes three page letter to Judge Abramson to reconsider the merits of
the Order dated December 29, 2010. (Exhibit D-2 particularly page 2)

> "It is my understanding that since the day of settlement, Mr. Porter has attempted
> to unwind the Bank Loan. When he first attempted to do so, he pointed out to
> the bank that the joint venture so required his signature (for the loan) At that
> time, the Bank pled ignorance to the very existence of the Joint Venture
> Agreement. In their responses, the bank and the receiver shockingly fail to
> disclose this. Prior to the Order being entered I had, in fact subpoenaed both
> Jonathon Hugg and David Nassatir, who represented the Bank at that time, to
> appear at the hearing. Both of them would have testified that the Bank did not
> know of the existence of the joint venture agreement when the loan transaction
> was consummated and that this mortgage foreclosure action was partly filed due
> to the existence of the "<u>side agreement</u>" which the bank had not been informed of
> prior to settlement. (Exhibit F-1 <u>December 19, 2006 Default letter</u>)

> Skip a paragraph

> "Not only did the bank's own title insurance company know of the existence of
> Ms. Porter's mortgage prior to and at the time of settlement, but so did the
> Bank's Attorney. At the hearing I was prepared to produce an e-mail which Mr.
> Nasatir received days (Exhibit B-2, E-mail Aug 22, 2005 from Terra's Attorney
> to the Banks Attorney "Dave, Attached are the Note/Mortgages from Porterra
> LLC to Debra Porter and Laura Terra respectively,") prior to settlement which
> disclosed the existence of Ms.Porter's mortgage as well as the subordination
> agreement and release of mortgages which he (David Nasatir) drafted and
> demand that Ms. Porter sign prior to settlement. The bank proceeded forward
> with settlement despite Ms. Porter never agreeing to so subordinate her
> mortgage.
> (Exhibit B-5 E-mail August 23, 2005 8:34 A.M. from the Banks
> Attorney Dave Nasatir to Nunzio Terra's Attorney
> "Finally I also left you a message regarding needing the Subordination and
> Mortgage Releases delivered to closing-even if it delays closing by a couple of
> days.")

14. It's ironic the Banks Attorney states to this Honorable Court in the October 20,
2011 Motion to Dismiss Hearing that I have committed some kind of bad faith or fraud as
cited on page 35 Document #41

The Court:  So, you think you can raise that even though you weren't a party to the state action.

Mr. Nemeroff:  Absolutely.  Because if- if your Honor bears in mind what the objective is, the objective is to prevent, essentially, bad-faith conduct—fraud if you will—by representing different facts from one court to the next to try and obtain an unfair advantage.

Yet on page 49 thru 51 of Document #41 this Honorable Court wisely addresses the issue.

Mr. Nochumson:  Yeah, but—and by the way, the underwriter has—has refused—my Understanding is the underwriter has refused coverage here, because, they claim a fraudulent conduct here. So, clearly—and again, this whole judicial—

The Court:  Okay.  Well wait a minute here, Common—well, what you're telling me then is Commonwealth issued a title insurance policy when the construction loan was executed which put the construction loan in first lien position?

Mr. Nochumson:  Yes

The Court:  Is that correct?

Mr. Nemeroff:  That's correct your Honor.

The Court:  Okay

Mr. Nochumson:  But—but again, your Honor, their own agent knew at the time of the existence of the first mortgage--- Mrs. Porter's first mortgage.

The Court:  Hm-hmm

Mr. Nocumson:  And the bank knew of the existence of the first mortgage at the time, they went forward-- I don't know your Honor, why—but they decided to go forward, the bank was represented by counsel at the time. And by the way, the—bank now is claiming that—you know—is relying on this joint-venture agreement. One of the grounds for the mortgage foreclosure action was the bank claimed that they didn't know about this joint-venture agreement

The Court:  Well, there's certainly a lot of disputed facts about what happened at that settlement.

Mr. Nemeroff :      Your Honor, were relying on the joint venture agreement
                    because it was attached as an exhibit to the 2006 state court
                    complaint that Mrs. Porter and Mr. Porter filed.

The Court:      Hm-hmm, yeah. Well , that I'm not concerned about, but I'm just
                thinking about this title policy that commonwealth issued. I mean
                if in fact, Mr. Terra was their agent and Mr. Terra knew about Mrs.
                Porter's mortgage, then Commonwealth knew about it by virtue of
                the fact their agent knew about it.

Mr. Nocumson:   The—the other thing, your Honor, this is an equitable doctrine and
                there's – there is a recent Commonwealth court decision, **T-a-p**
                **Pharmaceutical Products Inc**. citation 2011 Pa.
                Commonwealth Lexus 414 There the court actually refused to
                apply the doctrine of judicial estoppel due to the unclean hands of
                the defendant. Here, the bank—you know—if—if the Bank knew
                about the mortgages—Ms. Porter's mortgage—and decided to go
                forward—as your Honor stated before—if there is actual
                knowledge of—of a mortgage, the—that party holds subject to
                that mortgage.

The Court:  Okay

Summary and Legal Argument

Though I am not an Attorney and know I have the hard evidence to prove the Bank

knew about my mortgage prior to the August 24, 2005 construction loan between the

Bank and Nunzio and Laura Terra, by the advise of my counsel I entrusted him to

exercise a high level of legal acumen and ethical principles which would entail an

attorney to put his clients interest in front of his own. By my Attorney acknowledging to

this Court he has been threatened to be sued and no longer wants to represent me even

though I paid him the required $20,000 leads me to believe he is acting in the interest of

my opposition. The very fact of my Attorney not responding to the Superior Court

Decision, not submitting evidence for the motion opposing summary Judgment, not

taking the discovery of the Bank or conducting any depositions, should not beheld to my

account. I believe the Attorneys acted in a systematic fashion to tie the very hands of

this Honorable Court in placing my mortgage in its proper priority. Think about it, had my Attorney appealed the Superior Court Decision by arguing about my Constitutional-Rights being violated (as cited in his brief as one of the multiple issues presented before the State court) for the state court ignoring due process since the State Judge ordered a Rule to show cause hearing and then cancels the Rule to Show cause Hearing three days before the scheduled date without allowing me to present the evidence of testimony and all the facts submitted within this Motion. There would not be a Collateral Estopell Issue and this Honorable Court would not be legally obligated to rule the way it did with respect to the Summary Judgment filed by the Third Party Bidders. However, this Honorable Court has mentioned in at least two different hearings that I was dealt with unfairly by the State Court and fortunately there is a legal remedy to have my proverbial day in court and be able to finally address the claim of the Bank knowing about my mortgage prior to entering a construction loan with the guarantors of the loan Mr. and Mrs. Terra. Under the Federal Rules of Civil Procedure Rule 56 section f - Judgment Independent of the Motion, (2) grant the motion on the grounds not raised by a party or (3) consider Summary Judgment on its own after identifying for the parties material facts that may not be genuinely in dispute. The last page of Amended complaint Filed February 4, 2011 states. Wherefore, Ms. Porter requests that this Court enter judgment in her favor by declaring that the First Mortgage has priority status over the Second Mortgage and **awarding such further relief which it deems proper and just under the circumstances.**

. Based on the above information and the undisputed facts of the Bank preparing a Subordination and Standstill agreement for my signature and stating in multiple E-mails

that the Bank must have these documents signed, prior to the construction loan taking place and using the title company owned and operated by the Borrowers which the Bank has a secured interest in two months prior to the scheduled construction closing should move this court to issue a Summary judgment for Damages against T.D. Bank and have a jury trial to deal with the amount that should be awarded because of the "Bad faith Conduct –fraud if you will" perpetrated by Nunzio Terra, the Bank and their Title company.

Respectfully and prayerfully submitted,

Debra A. Porter Pro-Se

121 Knollwood Lodge Rd.

Hot Springs, AR. 71913

501 773-2704

DATED: September 7, 2012

All of the Exhibits are listed below, appear in the order of first mentioned:

Exhibit #1, Exhibit #2 "X", Exhibit #3 "X-1", Exhibit #4 "A-3",  Exhibit # 5 "B-4"

Exhibit # 6 "B-5", Exhibit #7 "B-2" , Exhibit # 8 "Q-2", Exhibit #9 "R-1",

Exhibit #10 "F-1", Exhibit #11 "T-2", Exhibit #12 "D-2"

Exhibit #1

Case 2:10-cv-07243-WY Document 65 Filed 05/08/12 Page 1 of 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEBRA PORTER             : CIVIL ACTION
                                   :
        vs.                :
                                   :
T.D. BANK, N.A.             :
*f/n/a Commerce Bank, N.A.*, et al.     : NO. 10cv7243

## O R D E R

        **AND NOW**, this 8th day of May, 2012, upon consideration of the Motion of Alan Nochumson, Esquire on Behalf of Nochumson P.C. and its attorneys for Leave to Withdraw as Counsel (Document No. 56), the response of defendant Pardes Group, Inc. and the response of the plaintiff, and counsel having given no specifics of his reason to seek withdrawal, and plaintiff having contested the same, and plaintiff alleging that counsel has received a fee of $34,000.00 thus far so that a refund of a portion of the fee may be due if counsel is allowed to withdraw and neither counsel nor the plaintiff having addressed the impact of the Superior Court decision dated April 10, 2012 which may have a substantial impact on plaintiff's case, **IT IS HEREBY ORDERED** that an evidentiary hearing is **SCHEDULED** on the motion for **Tuesday, May 29, 2012 at 10:00 a.m. in Courtroom 14-B, U.S. Courthouse, 601 Market Street, Philadelphia, PA**.

        Counsel for the defendants need not attend.

                                  s/William H. Yohn Jr.
                                  William H. Yohn Jr., Judge

Exhibit # 2  "X"

# **NOCHUMSON P.C.**

1616 Walnut Street
Suite 1819
Philadelphia, Pennsylvania 19103
Telephone: (215) 399-1346
Facsimile: (215) 399-1347
www.nochumson.com

Writer's email:  ·
alan.nochumson@nochumson.com

March 22, 2012

Via Electronic Mail and U.S. First-Class Mail

Robert H. Nemeroff, Esquire
Friedman, Schuman, Applebaum, Nemeroff & McCaffery, P.C.
101 Greenwood Avenue
Fifth Floor
Jenkintown, PA 19046

> **Re:    Porter v. TD Bank, N.A. *et al.***
> **E.D. Pa.; No. 10-7243**

Dear Mr. Nemeroff:

Enclosed please find Plaintiff's Second Request for Production of Documents Directed At Defendant TD Bank, N.A.

Please be guided accordingly.

Sincerely,

Alan Nochumson

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| DEBRA PORTER, | : | CIVIL ACTION | |
| Plaintiff, | : | | |
| v. | : | No. | 10-CV-07243 |
| TD BANK, N.A., *et al.*, | : | | |
| Defendant. | : | | |

## PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS
### DIRECTED TO DEFENDANT TD BANK, N.A.

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Debra Porter, by and through her attorneys, Nochumson P.C., hereby requests that Defendant TD Bank, N.A. produce the following documents and things for inspection and copying in the offices of Nochumson P.C., 1616 Walnut Street, Suite 1819, Philadelphia, Pennsylvania 19103 within thirty (30) days of the date of service of these requests. These requests are deemed to be continuing and are subject to supplementation as required by the Federal Rules of Civil Procedure.

### I.     DEFINITIONS AND INSTRUCTIONS

Unless the context clearly indicates otherwise, the following terms and phrases shall be deemed to have, without limitation, the following meanings:

1.     "You" and "your" shall refer to Defendant TD Bank, N.A. and any of its predecessors, privies, agents or representatives.

2.     "Ms. Porter" shall refer to Plaintiff Debra Porter and any of her privies, agents or representatives.

3.     "Mr. Porter" shall refer to James Porter and any of his privies, agents or representatives.

4.     "Mr. Terra" shall refer to Nunzio Terra and any of his privies, agents or representatives.

5.     "LLC" shall refer to Porterra, LLC and any of its predecessors, privies, agents or representatives

6.     "ULT" shall refer to United Land Transfer, LLC and any of its predecessors, privies, agents or representatives.

7.     "Gibor" shall refer to Gibor Partners, LP and any of its predecessors, privies, agents or representatives.

8.     "Y.N.L.M.E." shall refer to Y.N.L.M.E., Inc. and any of its predecessors, privies, agents or representatives.

9.     "Sheriff" shall refer to the Sheriff of the City and County of Philadelphia and any of its predecessors, privies, agents or representatives.

10.    The term "Loan" shall refer to the mortgage loan granted to the LLC by you on or about August 24, 2005.

11.    The term "Property" shall refer to the real property located at and known as 1039-1055 Frankford Avenue, Philadelphia, Pennsylvania 19125.

12.    The term "Joint Venture Agreement" shall refer to that certain Joint Venture Agreement executed by Mr. Terra and Mr. Porter.

13.    The term "First Mortgage" shall refer to that certain Mortgage entered into by the LLC and Ms. Porter on or about July 20, 2005.

14. The term "Sheriff's Sale" shall refer to the sheriff's sale which took place on January 4, 2011 concerning the Property.

15. The words "and" and "or" mean and/or.

16. Any term which is not defined herein has its usual and customary meaning.

17. The term "document" or "documents" is herein in the broadest sense, and means, unless otherwise indicated, all handwritten, printed, typed, recorded electronically or otherwise, computer discs, graphic or photographic material of any kind or character, non-duplicate copies now or at any time in your possession, custody or control, including among other things and without limitation, address and telephone records, affidavits, agreements, analyses, audits, audio tapes, bank checks, bank credit and debit memoranda, bank drafts, bank statements, blueprints, books, books of account, brochures, budgets, bulletins, business records, calendars, cash journals, certificates, change orders, charges, charts, checks, citations, complaints, computer data (including printouts and programs), contracts, correspondence, circular, compilations of data, desk pads and desk calendars, diagrams, diaries, depositions, drafts, drawings, electronic mail, expense records, financial calculations, financial projections, financial statements and reports, gallery proofs, general journals, general ledgers, graphs, inter-office communications, interviews, invoices, labels, letters, lists, logs, manuals, maps, memoranda, minutes, notes, note pads, notes and minutes of meetings, notes of conversations and conferences whether by telephone or in person, notices, pamphlets, payroll records, periodicals, phonograph records, photographs, plans, press releases, page proofs, records, reports, result of investigations, schedules, scripts, screenplays, specifications, speeches, statements of accounts, studies, summaries, surveys, survey studies, tape recordings, telegrams, telephone billing records, telephone logs, telephone message slips or memos, teletype messages and stories, transcripts,

video tapes, video discs, vouchers, voucher registers, warnings, working papers, work sheets and other compilations reflecting the combination and consolidation of accounting data, and other writings or parts thereof, of every kind and description (whether or not actually used, including drafts of all documents) and including not only originals of such documents but also photostatic or microfilmed, non-duplicate copies in whatever form, and all sound recordings in whatever form.

18.     The term "communication" means any oral or written utterance, notation, or statement of any nature whatsoever between or among two or more persons, by or to whomsoever made, and including, without limitation, correspondence, documents, e-mails, conversations, dialogues, discussions, interviews, consultations, negotiations, agreements, and other understandings.

19.     The term "person" or "persons" mean any individual, corporation, partnership, joint venture, firm, association, proprietorship, agency, board, authority, commission, or other entity.

20.     The phrase "concerning, referring, or relating to" means in any way showing, disclosing, evidencing, or reflecting, in whole or in part.

21.     The documents should be produced for inspection, organized and labeled to correspond to the categories of each numbered Request.

22.     In producing the documents requested herein, indicate the title and location of the file from which each document was obtained, and the identity of the custodian thereof.

23.     Unless the content of the Request specifically states otherwise, references to the singular include the plural and vice versa, references to one gender include the other gender,

references to the past tense include the present, references to the present tense include the past, and disjunctive terms or phrases should be read to include the conjunctive and vice versa.

24.     In the event any document called for by any Request or subpart thereof is objected to on the basis of privilege or any similar claim, a list is to be furnished identifying in each answer the documents so withheld, together with the following information:

    (a) the reasons for withholding;

    (b) a statement of facts constituting the basis for any claim of privilege, or any other ground of nondisclosure;

    (c) a brief description of the document, including:

      (i) the date of the document;

      (ii) number of pages, attachments and appendices;

      (iii) the identity of its author, authors or preparers;

      (iv) the identity of each person to whom the document or a copy thereof was sent, shown or made accessible, or to whom it was explained;

      (v) the identity of the present custodian; and

      (vi) the subject matter of the document, and in the case of any document relating in any way to a meeting or oral communication, identification of such meeting or oral communication.

25.     This Request applies to all documents in your possession, custody or control or in the possession, custody or control of persons acting on your behalf, including, without limitation your present and former agents, representatives, servants, contractors, employees, accountants, attorneys, investigators, indemnitors, insurers, consultants and sureties.

26.     The word "identify", or words of similar import, when used in reference to:

    (a)    a natural individual, requires you to state his or her full name, and present the last known residential address, business address, and telephone number;

    (b)    a business other than a corporation, requires you to state the full name or style under which the business is conducted, its business addresses, its telephone numbers and the identity of the person(s) who own, operate, and control the business;

    (c)    a document, requires you to state its title, its date, the names of its authors and recipients, and its present or last known location and custodian. If any document was, but no longer is, in your possession or subject to your control, state: (i) what disposition was made of it; (ii) the date thereof (iii) the person responsible for making the decision as to such disposition; and (iv) the person responsible for carrying out such disposition; and

    (d)    a communication, requires you, if any part of the communication was written, to identify the documents which refer to or evidence the communication, and, if any part of the communication was non-written, to identify the person(s) participating in or otherwise present during all or part of the communication, and describe the substance thereof.

27.     If you claim any ambiguity in interpreting any Request, your claim shall not be utilized as a basis for refusal to respond to the discovery request, and you shall set forth in your response the language deemed ambiguous and the interpretation used in responding to that discovery request.

## II.    REQUESTS FOR PRODUCTION OF DOCUMENTS

1.    All correspondence or documents exchanged between you and Y.N.L.M.E. concerning, referring, or relating to any interest Ms. Porter, Mr. Porter, Mr. Terra, or the LLC had in the Property prior to or at the time of the execution of the Loan, any interest the Bank or Mr. Terra had in ULT prior to or at the time of the execution of the Loan, ULT's handling of the processing of the title insurance for the Loan, or about the LLC, the Property, the Loan, the Joint Venture Agreement, the First Mortgage, the Sheriff's Sale, or the litigation currently pending between Ms. Porter, the Bank, and others.

2.    All correspondence or documents exchanged between you and Gibor concerning, referring, or relating to any interest Ms. Porter, Mr. Porter, Mr. Terra, or the LLC had in the Property prior to or at the time of the execution of the Loan, any interest the Bank or Mr. Terra had in ULT prior to or at the time of the execution of the Loan, ULT's handling of the processing of the title insurance for the Loan, or about the LLC, the Property, the Loan, the Joint Venture Agreement, the First Mortgage, the Sheriff's Sale, or the litigation currently pending between Ms. Porter, the Bank, and others.

3.    All notes, diaries and correspondence concerning, referring, or relating to any communications you had with or about Y.N.L.M.E as to any interest Ms. Porter, Mr. Porter, Mr. Terra, or the LLC had in the Property prior to or at the time of the execution of the Loan, any interest the Bank or Mr. Terra had in ULT prior to or at the time of the execution of the Loan, ULT's handling of the processing of the title insurance for the Loan, or about the LLC, the Property, the Loan, the Joint Venture Agreement, the First Mortgage, the Sheriff's Sale, or the litigation currently pending between Ms. Porter, the Bank, and others.

4.     All notes, diaries and correspondence concerning, referring, or relating to any communications you had with or about Gibor as to any interest Ms. Porter, Mr. Porter, Mr. Terra, or the LLC had in the Property prior to or at the time of the execution of the Loan, any interest the Bank or Mr. Terra had in ULT prior to or at the time of the execution of the Loan, ULT's handling of the processing of the title insurance for the Loan, or about the LLC, the Property, the Loan, the Joint Venture Agreement, the First Mortgage, the Sheriff's Sale, or the litigation currently pending between Ms. Porter, the Bank, and others.

5.     All notes, diaries and correspondence concerning, referring, or relating to any communications you had with or about the Sheriff as to any interest Ms. Porter, Mr. Porter, Mr. Terra, or the LLC had in the Property prior to or at the time of the execution of the Loan, any interest the Bank or Mr. Terra had in ULT prior to or at the time of the execution of the Loan, ULT's handling of the processing of the title insurance for the Loan, or about the LLC, the Property, the Loan, the Joint Venture Agreement, the First Mortgage, the Sheriff's Sale, or the litigation currently pending between Ms. Porter, the Bank, and others.

6.     All notes, diaries correspondence and other documents concerning, referring, or relating to what transpired at the Sheriff's Sale.

7.     All documents concerning, referring, or relating to any agreements, both oral and written, entered into by you and Y.N.L.M.E. about the Property or the litigation currently pending between Ms. Porter, the Bank, and others.

8.      All documents concerning, referring, or relating to any agreements, both oral and written, entered into by you and Gibor about the Property or the litigation currently pending between Ms. Porter, the Bank, and others.

NOCHUMSON P.C.

By: _____

ALAN NOCHUMSON
NATALIE KLYASHTORNY
1616 Walnut Street
Suite 1819
Philadelphia, PA 19103
(215) 399-1346 (telephone)
(215) 399-1347 (facsimile)

Attorneys for Plaintiff,
Debra Porter

Dated: March 22, 2012

Exhibit # 3  "X-1"

# NOCHUMSON P.C.

1616 Walnut Street
Suite 1819
Philadelphia, Pennsylvania 19103
Telephone: (215) 399-1346
Facsimile: (215) 399-1347
www.nochumson.com

Writer's email:
alan.nochumson@nochumson.com

August 15, 2012

Via Facsimile

The Honorable William H. Yohn, Jr.
United States District Court for the Eastern District of Pennsylvania
14613 United States Courthouse
Sixth and Market Streets
Philadelphia, PA 19106-1753

> **Re:  Porter v. T.D. Bank, N.A. *et al.***
> **E.D. Pa.; No. 10-7243**

Dear Judge Yohn:

I am writing this letter to inform Your Honor that the parties, in the interest of judicial economy, have agreed to postpone discovery pending Your Honor's ruling on the outstanding summary judgment motion. Should the summary judgment motion be denied, all discovery must be completed within sixty (60) days from the docketing of the court order denying the motion. I, on behalf of the parties, therefore, respectfully request that Your Honor issue a court order reflecting same.

Thank you in advance for Your Honor's consideration and continued guidance.

Respectfully submitted,

Alan Nochumson

cc:     Robert Nemeroff, Esquire (via electronic mail)
        Andrew L. Miller, Esquire (via electronic mail)

Exhibit # 4  "A-3"

# Exhibit A-3

Subordination : Standstill
Agreement Prepared by Bank

## SUBORDINATION AND STANDSTILL AGREEMENT

THIS SUBORDINATION AND STANDSTILL AGREEMENT (this "Agreement") is made as of the_____ day of August 2005, by and between and **COMMERCE BANK, N.A.,** a national banking association, having its offices at 1701 Route 70 East, Cherry Hill, New Jersey 08034 (the "Bank"), and **Debra Porter**, with an address of 121 Knollwood Lodge Road, Hot Springs, Arkansas 71913 (the "Junior Lender") and **PORTERRA, LLC** a Pennsylvania limited liability company having an address at 2190 Bennett Road, Philadelphia, Pennsylvania 19116 (the "Borrower").

### Background

A.     The Bank and Borrower have entered into a Loan Agreement of even date herewith (the "Loan Agreement"), providing for a $5,860,000.00 loan (the "Loan"). Capitalized terms used herein which are not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

B.     As consideration for the Bank's agreement to provide the Loan to the Borrower, the Junior Lender has agreed, as hereinafter more fully set forth, that all of the obligations and indebtedness of the Borrower to Junior Lender under any and all notes, mortgages or debts presently existing or to become due (collectively "Junior Obligations") shall be subordinated both in payment and lien priority to all loans, obligations, indebtedness and liabilities of the Borrower to the Bank, whether present or future, including that certain Mortgage from Borrower to Bank of even date herewith (collectively, the "Senior Obligations") and that no amount shall be paid on any Junior Obligations until all Senior Obligations have been fully paid and discharged.

C.     In accordance with the terms of this agreement, the Bank hereby agrees to permit the Junior Lender to make a loan to the Borrower, not to exceed the amount of Two Million Eight Hundred Thousand Dollars ($2,800,000.00) on certain real property as further detailed on Exhibit A attached hereto (the "Mortgaged Property").

NOW, THEREFORE, in consideration of the mutual covenants herein contained and of such extensions of Loan as the Bank has made or at any time hereafter may make to the Borrower, under the Loan Agreement or otherwise, and intending to be legally bound hereby, the parties hereto mutually covenant and agree as follows:

1.     (a)     Except as set forth in Section 2(a) hereof, Junior Lender agrees, for himself, his successors and assigns (including any subsequent holder of any Note other than that of the Bank) (Junior Lender and his successors and assigns being hereinafter referred to collectively as the "Subordinated Creditors"), that all claims, demands, liens and security interests of the Subordinated Creditors against the Borrower, arising or growing out of any indebtedness, liability, obligation or other responsibility, due or to become due, direct or indirect, primary or secondary, fixed or contingent, in respect of any Junior Obligations held by the Junior Lender (the "Subordinated

ᶜᵘⁿᵗˢᵏ

Liabilities"), are expressly Subordinate and Junior in right of payment (as defined in Section 2 hereof) to all of the Borrower's obligations in respect of all principal amount of, premium, if any, and accrued interest on (including, without limitation, any interest which accrued after the commencement of any case, proceeding or other action relating to the bankruptcy, insolvency or reorganization of the Borrower to the extent the Bank has the right to receive the same from the Borrower) all indebtedness, obligations and liabilities arising under the Loan Agreement, the Note or the Loan Documents (collectively, the "Bank Documents"), as the Bank Documents, or any of them, may be amended, modified, supplemented or affected by waiver and as such indebtedness, obligations and liabilities may be extended, increased, renewed, replaced, refunded or refinanced, and whether due or to become due, direct or indirect, primary or secondary, fixed or contingent (the indebtedness, obligations and liabilities described above collectively sometimes being referred to hereinafter as the "Senior Indebtedness"); and (b) Borrower shall not pay the amount of, or any amount on account of or give any collateral or security for the Subordinated Liabilities and Subordinated Creditors agree not to accept any of the same.

    2.    "Subordinate and Junior in right of payment" shall mean that:

        (a)    No part of the Subordinated Liabilities shall have any claim to the assets of the Borrower on parity with or prior to the claim of the Senior Indebtedness. Unless and until the Senior Indebtedness shall have been fully and finally paid and satisfied, the Subordinated Creditors, either individually or collectively, will not, without the express prior written consent of the Bank, take or receive from the Borrower, and the Borrower will not make, give or permit, directly or indirectly, by setoff, redemption, purchase or in any other manner, any payment, distribution, prepayment or collateral security for the whole or any part of the Subordinated Liabilities, for principal, interest or otherwise. For purposes of this Section 2(a) and the other provisions hereof, the term "fully and finally paid and satisfied" with respect to the Senior Indebtedness shall mean that the Bank shall have received full and final payment from Borrower or Guarantor of all Senior Indebtedness and any and all preference periods under every applicable federal and state bankruptcy, insolvency, moratorium, reorganization, liquidation, dissolution or other similar laws shall have expired without the institution or commencement of any proceeding, suit or claim under any such law by or against the Borrower or Guarantor.

        (b)    Until the Senior Indebtedness is paid in full to Bank, the Subordinated Creditors shall standstill with regard to any rights granted them under their loan with Borrower, and Subordinated Creditors further acknowledge that they shall have no rights to exercise any remedies under the terms of their loan obligation to Borrower, unless Bank first consents in writing to such action. The Bank shall endeavor to give prompt written notice to the Subordinated Creditors of any Event of Default. Upon an Event of Default, the Subordinated Creditors, without the prior written consent of the Bank, shall not take any action or exercise any rights, remedies or powers under the terms of the Subordinated Liabilities, or other existing mortgages, or exercise any other right or remedy at law or equity that any or all of the Subordinated Creditors might otherwise possess to collect any amount due and payable under the Subordinated Liabilities, including, but not limited to, the acceleration of the Subordinated Liabilities, the commencement of any foreclosure on any lien or security interest, the filing of any petition in bankruptcy or the taking advantage of any other insolvency law of any jurisdiction, unless and until the Senior Indebtedness shall have been fully

2

and finally paid and satisfied, provided, however, that the Subordinated Creditors may participate in any bankruptcy or other creditor proceeding so long as the Subordinated Creditors claims remain subordinate to those of the Bank during any such proceeding.

In the event of any distribution, division or application, partial or complete, voluntary or involuntary, by operation of law or otherwise, of all or any substantial part of the property, assets or business of Borrower, or the proceeds thereof, to any creditor or creditors of Borrower, or upon any indebtedness of Borrower becoming due and payable by reason of any liquidation, dissolution or other winding-up of Borrower or its business or by reason of any sale, receivership, insolvency, reorganization or bankruptcy proceedings, assignment for the benefit of creditors, or any arrangement or proceeding by or against Borrower for any relief under any bankruptcy, reorganization or insolvency law or laws, Federal or state, or any law, Federal or state, relating to the relief of debtors, readjustment of indebtedness, reorganization, composition, or extension, or in the event that any of the Senior Indebtedness has become, or has been declared to be, due and payable (and have not been paid in full in accordance with their terms), then and in any such event, any payment or distribution of any kind or character, whether in cash, property or securities, which, but for the subordination provisions contained herein, would otherwise be payable or deliverable to the Subordinated Creditors upon or in respect of the Subordinated Liabilities shall instead be paid over or delivered to the Bank for its account, and the Subordinated Creditors shall not receive any such payment or distribution or any benefit there from unless and until the Senior Indebtedness shall have been fully and finally paid and satisfied.

3.     The Subordinated Creditors consent that, without further assent by or notice to the Subordinated Creditors, without impairing, abridging, releasing or affecting the subordination provided for herein, (a) any demand for payment of any of the Senior Indebtedness made by the Bank may be rescinded in whole or in part by the Bank and any of the Senior Indebtedness, or the liability of Borrower or any other party upon or for any part thereof, or any collateral security or guaranty therefore or right of offset with respect thereto, may, from time to time, in whole or in part, be renewed, extended, modified, accelerated, compromised, waived, surrendered, or released by the Bank, (b) any of the Bank Documents may, to the extent pertinent to the Senior Indebtedness, be amended, modified, supplemented or terminated, in whole or in part, as the Bank may deem advisable, and any collateral security at any time held by the Bank for the payment of any of the Senior Indebtedness may be sold, exchanged, waived, surrendered or released, and (c) the Bank may exercise or refrain from exercising any right, remedy or power granted by any document or instrument creating, evidencing or otherwise relating to the Senior Indebtedness, or at law, in equity, or otherwise, with respect to the Senior Indebtedness, or any collateral security lien (legal or equitable), held, given or intended to be given therefore (including, without limitation, the right to perfect any lien or security interest created in connection therewith).

4.     No failure to exercise, and no delay in exercising on the part of the Bank any right, power or privilege hereunder or under any of the Bank Documents shall operate as a waiver thereof; nor shall any single or partial exercise by the Bank of any rights, power or privileges hereunder or under the Senior Indebtedness shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies provided in the subordination

3

provisions contained herein and in any agreements, instruments and documents referred to in any of the foregoing are cumulative and shall not be exclusive of any rights or remedies provided by law.

5.      This instrument embodies the entire agreement of the parties hereto concerning the subject matter hereof, and it is acknowledged that there are no customs, representations, promises, terms, conditions or obligations referring to the subject matter, and no inducements or representations leading to the execution or delivery hereof, other than those set forth herein.

6.      The Bank and any other holder of any Senior Obligations issued under the Loan Agreement shall not be prejudiced in its right to enforce subordination of the Subordinated Liabilities by any act or failure to act on the part of either the Borrower or the Subordinated Creditors nor by any release of security, if any, for any Senior Obligations.

7.      Nothing herein contained shall impair any rights of the Bank with respect to any collateral hereafter pledged to the Bank as security for any indebtedness of the Borrower, or to the proceeds of such collateral. The Bank may at any time, without notice to the Subordinated Creditors, release any other party primarily or secondarily liable for any Senior Obligations and may release all or any part of any mortgage or collateral held by the Bank as security for any Senior Obligations, all without in any manner affecting the obligations of the Subordinated Creditors under this Agreement.

8.      Reserved.

9.      This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns. Each of the parties hereto expressly states that such party intends to be legally bound hereby.

10.     The Subordinated Creditors and the Borrower consent to the terms of this Agreement and agree to be bound by its terms and to do, execute, acknowledge and deliver at its costs and expense all such further acts, deeds, conveyances, assignments, notices of assignment, documents, transfers and assurances as the Bank may from time to time reasonably require for carrying out or facilitating the performance of the terms of this Agreement.

11.     A default under this Agreement by any or all of the Subordinated Creditors or the Borrower shall constitute an Event of Default under the Loan Agreement.

12.     Nothing herein is intended or shall be construed to give the Subordinated Creditors or any other person any right, remedy, claim or benefit under or in respect of this Agreement.

13.     This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to principles of conflicts of laws.

14.     The parties further agree that the Junior Lender, at the request of the Bank, shall release any and all parcel(s) which comprise the Mortgaged Property, as determined by the Bank, from the Junior Obligations for no consideration, provided that such parcel is the subject of a sale by

4

645158

the Borrower whereby a portion of the proceeds will be paid to the Bank to reduce the Senior Obligations. The parties further agree Junior Lender shall execute releases for all portions of the Mortgaged Property, which releases the Bank shall hold in escrow and only use if Bank consents to release its lien against such portion of the Mortgaged Property pursuant to this Section 14, in which case the Junior Lender hereby appoints Bank as its attorney in fact to deliver said releases and execute any and all necessary documentation to effectuate such release.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in their names as of the day and year first above written.

JUNIOR LENDER:

Attest                                             DEBRA PORTER

By: _____
Name: DEBRA PORTER
Title:

BORROWER:

Witness:                                           PORTERRA, LLC

By: _____
Name:  Nunzio Terra
Title:  Member

BANK:

COMMERCE BANK, N.A.

By: _____
         Joseph L. Rago
         Assistant Vice President

5

## RELEASE OF MORTGAGE

### TO ALL TO WHOM THESE PRESENTS SHALL COME,

**WHEREFORE,** pursuant to that certain Mortgage (the "Mortgage") dated _____, 2005 from PORTERRA, LLC, with an address of 2190 Bennett Road, Philadelphia, Pennsylvania 19116 ("Mortgagor") to Debra Porter, an individual with an address of 121 Knollwood Lodge Road, Hot Springs, Arkansas 71913 ("Mortgagee") recorded in the Office of the Recorder of Deeds in and for Philadelphia County, Pennsylvania (the "Recorder's Office") on _____ __, 2005 in Book _____, Page _____, Mortgagor granted and conveyed unto Mortgagee the premises therein particularly described located at 1039-55 Frankford Avenue, Unit #_____, City of Philadelphia, Philadelphia County, Commonwealth of Pennsylvania, as more fully described in Exhibit A attached hereto (the "Premises"), to secure the payment of a certain loan of to the original principal amount of $2,800,000.00 with interest, as described in said Mortgage, and

**WHEREAS,** the Mortgagor has requested that Mortgagee release the Premises from the lien and operation of the Mortgage;

**NOW, THEREFORE,** know ye, that Mortgagee, in consideration of a sum of lawful money to it in hand paid by Mortgagor, the receipt and sufficiency of which is hereby acknowledged, has remised, released, quit-claimed, exonerated and discharged, and by these presents does remise, release, quit-claim, exonerate and discharge any lands or premises presently encumbered by said Mortgage which are included within the Premises unto said Mortgagor to hold the same with appurtenances, the said Mortgagor, its successors and assigns, forever freed, exonerated and discharged of and from the lien of the Mortgage and every part thereof.

**IN WITNESS WHEREOF,** the Mortgagee, intending to be legally bound, has caused these presents to be duly executed by its duly executed authorized officers as of the _____ day of _____ 2005.

Witness:                                                    DEBRA PORTER

_____                    By _____
                                                             Name: DEBRA PORTER

## ACKNOWLEDGMENT

State of          $\Big\}$ ss
County of

On this the _____ day of _____, 2005, before me, the undersigned Notary Public, personally appeared **DEBRA PORTER**, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public
My commission expires_____

7

**ACKNOWLEDGMENT**

COMMONWEALTH OF PENNSYLVANIA     :
                                 :     SS
COUNTY OF PHILADELPHIA                      :


On the _____ day of August 2005 before me, the subscriber, a Notary Public in and for the Commonwealth and County aforesaid, personally appeared _____, the _____ of PORTERRA, LLC, a Pennsylvania limited liability company, who acknowledged that he, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

WITNESS my hand and seal the day and year aforesaid.

_____
Notary Public

My Commission Expires:

8

645158

## ACKNOWLEDGMENT

COMMONWEALTH OF PENNSYLVANIA    :

                                           :    SS

COUNTY OF PHILADELPHIA             :

On the _____ day of August 2005 before me, the subscriber, a Notary Public in and for the Commonwealth and County aforesaid, personally appeared _____, the _____ of COMMERCE BANK, N.A., who acknowledged that he, being authorized to do so, executed the foregoing instrument for the purposes therein contained.

WITNESS my hand and seal the day and year aforesaid.

_____

Notary Public

My Commission Expires:

9

Exhibit # 5  "B-4"

Exhibit B-4

E-mail
NASATIN TO Erlichman

"Needing Subordination and
Mortgage Releases to be at
Closing - even if it delays
closing by a couple of days"

## Neil Erlichman, Esq.

| | |
|---|---|
| From: | David Nasatir [David.Nasatir@Obermayer.com] |
| Sent: | Tuesday, August 23, 2005 8.34 AM |
| To: | 'Neil Erlichman' |
| Cc: | 'Joe Rago' |
| Subject: | Opinion letter |

Neil:

To follow up my voice messages, please revise the opinion letter to include 1101 Frankford, LLC as an obligor, authorized to pledge the property, in good standing etc. I also need the Opinion that the project has received all required zoning relief, if any, and that it complies with the zoning ordinance.

I forwarded to you a form copy of my opinion that has the key paragraph in it, and Joe Rago of Commerce has confirmed it is being required by the Bank. If you are unable to give it because you didn't do the zoning, then please arrange to get such a letter from the attorney that did the zoning.

Finally, I also left you a message regarding needing the Subordination and Mortgage Releases deloivered to closing-even if it delays closing by a couple of days.

Please call to discuss. Thanks.

have

ent via BlackBerry from T-Mobile.

Exhibit # 6  "B-5"

Exhibit B-5

E-mail
Nasatir to Erlichman

"The following are still missing
and must be delivered at
Closing"

Nasatir, David

| | |
|---|---|
| From: | Nasatir, David |
| Sent: | Tuesday, August 23, 2005 12:14 PM |
| To: | 'Neil Erlichman' |
| Cc: | jroge@yesbank.com; 'bsherman@yesbank.com' |
| Subject: | Porterra |

Attachments: PH1-#647480-v1-commerce_porterra_ARLP_1101_Frankford.DOC; PH1-#647485-v1-commerce_porterra_1101_frankford_collateral_assignment.DOC; PH1-#647491-v1-commerce_porterra_1101_frankford_enviro.DOC

Neil:

To summarize our conversation, the following items are still missing and must be delivered at closing:

1-the releases for the Property
2-the Subordination Agreement
3-the corrected builders risk insurance noting CBNA as the Loss Payee in addition to Mortgagee
4-Proof of Liability Insurance noting CBNA as additional insured
5-The revised Opinion Letter adding 1101 Frankford, LLC as a party plus the following language regarding zoning:

In connection with the existing use of the Mortgaged Property, Borrower has received all required zoning, building, and land use approvals from the appropriate governmental authorities having jurisdiction over the Mortgaged Property for the contemplated use. The proposed use(s) of the Mortgaged Property by the Borrower: (i) is/are permitted uses, (ii) there are no outstanding violations or threatened violations with respect to the Mortgaged Property, and (iii) there are no pending proceedings regarding the Mortgaged Property.

Please also PDF the zoning information/permits and approval.

In addition, I am attaching the 1101 Frankford, LLC assignment of rents, Collateral assignment and environmental indemnity. these docs match the agreed upon Porterra, LLC docs, but are solely for 1101.

Please call with any questions. Otherwise, I will see you tomorrow at 10 am at my offices.

Thanks

Dave Nasatir
Obermayer Rebmann Maxwell & Hippel, LLP
1617 John F. Kennedy Blvd, 19th Floor
Philadelphia, PA 19103-1895
215-665-3036 (Phone)
215-665-3139 (Facsimile)

Exhibit # 7  "B-2"

Exhibit B-2
Erlichman to Nasatir
August 22, 2005 12:23 P.M.

Proof Bank Received a copy
of July 20, 2005 Mortgage

Neil Erlichman, Esq.

| | |
|---|---|
| From: | David.Nasatir [David.Nasatir@Obermayer.com] |
| Sent: | Monday, August 22, 2005 1:58 PM |
| To: | 'Neil Erlichman' |
| Subject: | Re: Porterra Documents |

Neil:

I am out of the office and will not be able to review your deliveries until tomorrow. Please clear up one point regarding the loan documents–I am unclear, did you make additional revisions to my draft loan documents, and email those to me this morning?  If so are those changes in redline?  Otherwise, I presume your email means you have accepted the documents I revised with the changes your client wanted and my client agreed to grant, and circulated last week.

Thanks for clearing up in advance. I am trying to coordinate getting docs in final.

Dave
-----Original Message-----
From: "Neil Erlichman" <neil@kattorney.com>
Date: Mon, 22 Aug 2005 12:51:35
To:'"Nasatir, David'" <david.nasatir@obermayer.com>
Subject: FW: Porterra Documents

From: Neil Erlichman [mailto:neil@kattorney.com]
Sent: Monday, August 22, 2005 12:49 PM
To: 'Neil Erlichman'
Subject: RE: Porterra Documents

From: Neil Erlichman [mailto:neil@kattorney.com]
Sent: Monday, August 22, 2005 12:23 PM
To: 'Nasatir, David'
Subject: Porterra Documents

Dave,

Attached are the Note/Mortgages from Porterra, LLC to Debra Porter and Laura Terra respectively.  I am assuming the subordinate Note/Mortgages can be executed and recorded following our settlement.

Additionally, I attach the opinion letter of this firm in connection with our contemplated transaction.  I am still awaiting Certificates of Good Standing for Porterra, LLC and 1011 Frankford, LLC.  I do have a notarized statement from Robert Worthington of M. Burr Keim regarding the same, which are attached for your review.

Lastly, my client has accepted the documents as modified which incorporate all the changes you made, as well as some minor form changes, all of which are attached hereto.

Please call me to finalize these documents after your review. We are confirmed for settlement at your office, Wednesday, August 24, 2005 at 10:00 a.m.

Thanks;

Neil

Neil Erlichman, Esq.
13050 Bustleton Avenue
Philadelphia, PA 19116
T: 215.969.9933
F: 215.969.2250
E: neil@kattorney.com

Exhibit # 8  "Q-2"

Exhibit Q-2

Security Interest Commerce Bank
had with United Land Transfer
July 7, 2005 terminated Feb 15, 2007



**PENNSYLVANIA**
**Department of State**

### Uniform Commercial Code (UCC)

UCC | Fee Schedule | Forms | Research | Online Services | Contact UCC | Business Services | Help

Filing Chain for a Debtor

Filing Type: UCC

| Add To Cart | File Number | Filing Date | Documents | Lapse Date | Microfilm Number | Microfilm Start | Microfilm End | Microfilm |
|---|---|---|---|---|---|---|---|---|
| ☑ | 2005071100631 | 07/07/2005 | Initial | 07/07/2010 | 32 | 40310 | 1 | |

| Record Type | Name and Address |
|---|---|
| Secured Party | Commerce Bank/Pennsylvania, N.A. 1900 Market Street, Philadelphia, PA 19103 |
| Debtor | United Land Transfer, LLC 2190 Bennett Road, Philadelphia, PA 19116 |

☑ 2007021604013 02/15/2007 Termination Secured Party 07/07/2010

Notice: Information presented on this Web site is collected, maintained, and provided for the convenience of the reader. While every to keep such information accurate and up-to-date, the Secretary of State does not certify the authenticity of information herein that third parties. The Secretary of State shall under no circumstances be liable for any actions taken or omissions made from reliance on information contained herein from whatever source or any other consequences from any such reliance.

Home | Site Map | Site Feedback | View as Text Only | Employment



Copyright © 2002 Pennsylvania Department of State. All Rights Reserved
Commonwealth of PA Privacy Statement

7

File Number: 2005071100631
Date Filed: 07/07/2005 08:00 AM
Pedro A. Cortes
Secretary of the Commonwealth

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY
A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

138641111

**DILIGENZ, INC.**

State of Pennsylvania
UCC1 Initial Filing 1 Page(s)

T0S1501114?

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| United Land Transfer, LLC | | | | | |
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2180 Bennett Road | Philadelphia | | PA | 19115 | USA |
| 1d. SEE INSTRUCTIONS | ADD'L INFO RE 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | | |
| | ORGANIZATION DEBTOR LLC | PA | PA 3200097 | | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'L INFO RE 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | | |
| | ORGANIZATION DEBTOR | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Commerce Bank/Pennsylvania, N.A. | | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | | MIDDLE NAME | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | | STATE | POSTAL CODE | COUNTRY |
| 1900 Market Street | Philadelphia | | PA | 19103 | USA |

4. This FINANCING STATEMENT covers the following collateral:

All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any kind relating to any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds)

| 5. ALTERNATIVE DESIGNATION (if applicable): | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable] | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | ☐ All Debtors ☐ Debtor 1 ☐ Debtor 2 | | |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |
| 34556-180161 0624-Commonwealth of Pennsylvania(4020PA) | | | | | 138641111 | |

FILING OFFICE COPY — UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Metland Financial Solutions
209 S.W. 6th Avenue, Portland, Oregon 97204

File Number: 2007021604013
Date Filed: 02/15/2007 08:00 AM
Pedro A. Cortés
Secretary of the Commonwealth

# UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER** [optional]
Phone (800) 331-3282    Fax (818) 662-4141

**B. SEND ACKNOWLEDGEMENT TO:** (Name and Mailing Address)   13700 COMMERCE BANK

UCC Direct Services.
P.O. Box 29071
Glendale, CA 91209-9071

10361861

PENN

Commonwealth of Pennsylvania
UCC3 Amendment 1 Page(s)

10704764176

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1a. INITIAL FINANCING STATEMENT FILE #**
2005071100631  07-JUL-2005  SS PA

2. [X] **TERMINATION:**

6. **CURRENT RECORD INFORMATION:**
6a. ORGANIZATION'S NAME
United Land Transfer, LLC

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT**
9a. ORGANIZATION'S NAME
Commerce Bank, N.A.

**10. OPTIONAL FILER REFERENCE DATA**
10361861  Debtor Name: United Land Transfer, LLC  commerce bank pa/56100000  4357/1601510624

FILING OFFICE COPY - NATIONAL UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

Exhibit # 9  "R-1"

Exhibit R-1

August 24, 2005 Settlement Sheet
List Place of Settlement As
2190 Bennett Rd This is not TRUE
Settlement had taken place AT the
firm of Obermayer

# SETTLEMENT STATEMENT

| | |
|---|---|
| Optional Form for | U.S. DEPARTMENT OF HOUSING |
| Transactions without Sellers | AND URBAN DEVELOPMENT |
| | OMB Approval No. 2502-0265 (expires 9/30/2008) |

File Number: M05-1276A
Loan Number:
Mtg. Ins. Case Number

| NAME OF BORROWER: | Porters, LLC |
|---|---|
| ADDRESS: | |
| NAME OF LENDER: | Commerce Bank N.A. |
| ADDRESS: | KIAOA, 100 East DeKalb Pike, King of Prussia, PA 19406 |
| PROPERTY ADDRESS: | 1101-03 Frankford Avenue, 1039-55 Frankford Avenue, Philadelphia, PA 19125 Philadelphia City |
| SETTLEMENT AGENT: | United Land Transfer, LLC, Telephone: 215-677-4700 Fax: 215-968-2250 |
| PLACE OF SETTLEMENT: | 2190 Bennett Road, Philadelphia, PA 19116 |
| SETTLEMENT DATE: | 08/24/2005 |
| DISBURSEMENT DATE: | 08/23/2005 |

Loan Number:

| L. Settlement Charges | | M. Disbursement to Others | |
|---|---|---|---|
| 800. Items Payable in Connection with Loan | | 1501. | |
| 801. Loan Origination Fee 0.000% to | | | |
| 802. Loan Discount 0.000% to | | 1502. | |
| 803. Appraisal Fee to Commerce Bank N.A. | 8,300.00 | | |
| 804. Credit Report | | 1503. | |
| 805. Lender's Inspection Fee | | | |
| 806. Mortgage Application Fee | | 1504. | |
| 807. Commitment Fee to Commerce Bank N.A. | 38,600.00 | | |
| 808. Searches to Commerce Bank N.A. | 84.00 | 1505. | |
| 900. Items Required by Lender to be Paid in Advance | | | |
| 901. Interest From 08/29/2005 to 09/01/2005 @$ per day | | 1506. | |
| 902. Mortgage Insurance Premium for to | | 1507. | |
| 903. Hazard Insurance Premium for to | | | |
| 904. | | 1508. | |
| 1000. Reserves Deposited with Lender | | 1509. | |
| 1001. Hazard Insurance mo. @$ per month | | | |
| 1002. Mortgage Insurance mo. @$ per month | | 1510. | |
| 1003. City Property Tax mo. @$ 881.49 per month | | | |
| 1004. County Property Tax mo. @$ per month | | 1511. | |
| 1005. School Tax mo. @$ per month | | | |
| 1006. mo. @$ per month | | 1512. | |
| 1007. mo. @$ per month | | | |
| 1008. mo. @$ per month | | 1513. | |
| 1009. Aggregate Analysis Adjustment | 0.00 | | |
| 1100. Title Charges | | 1514. | |
| 1101. Settlement or closing fee | | | |
| 1102. Abstract or title search | | 1515. | |
| 1103. Title examination | | | |
| 1104. Title insurance binder | | 1516. | |
| 1105. Document Preparation | | | |
| 1106. Notary Fees | | 1517. | |
| 1107. Attorney's fees | | | |
| (includes above items No. ) | | 1518. | |
| 1108. Title Insurance to United Land Transfer, LLC | 13,009.85 | | |
| (includes above items No. ) | | 1519. | |
| 1109. Loan Policy $5,850,000.00 - 13,009.85 | | | |
| 1110. Owner's Policy $ | | 1520. TOTAL DISBURSED | |
| 1111. End 100, End 300 to United Land Transfer, LLC | 100.00 | (enter on line 1603) | |
| 1112. End 7,End 7 to United Land Transfer, LLC | 50.00 | N. NET SETTLEMENT | |
| 1113. End 1015, Closing Subl. to United Land Transfer, LLC | 1,333.99 | | |
| 1200. Government Recording and Transfer Charges | | 1600. Loan Amount (Amount of Loan $5,850,000.00) | 248,000.00 |
| 1201. Recording Fees Deed $64.50; Mortgage $88.50 | 154.00 | | |
| 1202. City/County taxstamps Deed $34,508.80 | 34,508.80 | 1601. PLUS Cash/Check from Borrower | 0.00 |
| 1203. State Taxstamps | | | |
| 1204. ASSIGNMENT OF RENTS to United Land Transfer Recording Account | | 1602. MINUS Total Settlement Charges | 247,879.04 |
| 1205. Add'l Recording Fees to United Land Transfer Recording Account | 1,000.00 | (line 1400) | |
| 1300. Additional Settlement Charges | | 1603. MINUS Total Disbursements to Others | 0.00 |
| 1301. 2005 RE Taxes 1101 Frankford to City of Phila Dept of Revenue | 11,800.00 | (line 1520) | |
| 1302. 1997 RE TAXES 1039 FRANKFORD to CITY OF PHILA DEPT OF REVENUE | 4,000.00 | | |
| 1303. 2004-05 RETAXES1039 FRANKFORD to CITY OF PHILA DEPT OF REVENUE | 14,000.00 | 1604. EQUALS Disbursement to Borrower | 140.96 |
| 1304. Water X109 Frankford to Water Revenue Bureau | 1,214.86 | (after expiration of any applicable | |
| 1305. Lien - Damaged Water to Water Revenue Bureau | 42.00 | rescission period required by law) | |
| 1306. Sett Cost Reimbursement to Porters, LLC | 107,927.54 | | |
| 1307. Legal Fees to David Neustodt, Esq Irm | 3,554.00 | | |
| 1308. Legal Fees to Neil Erichson, Esq | 6,000.00 | | |
| 1400. Total Settlement Charges (enter on line 1602) | 247,879.04 | | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Porters, LLC

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement.

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010

Exhibit R-2

Transfer Tax Certification

August 24, 2005

Signed by Rep from United Land
Transfer

|  | | BOOK NO. | PAGE NO. |
|---|---|---|---|

# PHILADELPHIA REAL ESTATE
# TRANSFER TAX CERTIFICATION

DATE RECORDED

CITY TAX PAID

Complete each section and file in duplicate with Recorder of Deeds when (1) the full consideration/value is/is not set forth in the deed, (2) when the deed is with consideration, or by gift, or (3) a tax exemption is claimed. If more space is needed, attach additional sheet(s).

## A. CORRESPONDENT — All inquiries may be directed to the following person:

| NAME | | | | TELEPHONE NUMBER: | Telephone: 215-677- |
|---|---|---|---|---|---|
| United Land Transfer, LLC | | | | AREA CODE (     ) | 4700 Fax: 215-677- |
| STREET ADDRESS | | CITY | | STATE | ZIP CODE |
| 2190 Bennett Road | | Philadelphia | | PA | 19116 |

## B. TRANSFER DATA
DATE OF ACCEPTANCE OF DOCUMENT: **August 24, 2005**

| GRANTOR(S)/LESSOR(S) | GRANTEE(S)/LESSEE(S) |
|---|---|
| James E. Porter and Debra A. Porter, | Porterra, LLC |
| STREET ADDRESS | STREET ADDRESS |
| 121 Knollwood Lodge Road | 1039-55 Frankford Avenue |

| CITY | STATE | ZIP CODE | CITY | STATE | ZIP CODE |
|---|---|---|---|---|---|
| Hot Springs, | AR | 79313 | Philadelphia | PA | 19125 |

## C. PROPERTY LOCATION

| STREET ADDRESS | CITY, TOWNSHIP, BOROUGH |
|---|---|
| 1039-55 Frankford Avenue | Philadelphia City |

| COUNTY | SCHOOL DISTRICT | TAX PARCEL NUMBER |
|---|---|---|
| Philadelphia | Philadelphia | 884586505-01-00 |

## D. VALUATION DATA

| 1. ACTUAL CASH CONSIDERATION | 2. OTHER CONSIDERATION | 3. TOTAL CONSIDERATION |
|---|---|---|
| 1.00 | + 0 | = 1.00 |
| 4. COUNTY ASSESSED VALUE | 5. COMMON LEVEL RATIO FACTOR | 6. FAIR MARKET VALUE |
| 128,000.00 | X 3.37 | = 431,360.00 |

## E. EXEMPTION DATA

| 1A. AMOUNT OF EXEMPTION | 1B. PERCENTAGE OF INTEREST CONVEYED | |
|---|---|---|
| 0 | 100 | |

2. Check Appropriate Box Below for Exemption Claimed

☐ Will or intestate succession _____ .
                       *(NAME OF DECEDENT)*                        *(ESTATE FILE NUMBER)*

☐ Transfer to Industrial Development Agency.

☐ Transfer to agent or straw party. (Attach copy of agency/straw party agreement).

☐ Transfer between principal and agent. (Attach copy of agency/straw trust agreement). Tax paid prior deed $ _____ .

☐ Transfers to the Commonwealth, the United States, and Instrumentalities by gift, dedication, condemnation or in lieu of condemnation. (Attach copy of resolution).

☐ Transfer from mortgagor to a holder of a mortgage in default. Mortgage Book Number _____ , Page Number _____ . Mortgagee (grantor) sold property to Mortgagor (grantee) (Attach copy of prior deed).

☐ Corrective deed (Attach copy of the prior deed).

☐ Other (Please explain exemption claimed, if other than listed above.) _____

_____

_____

*Under penalties of law or ordinance, I declare that I have examined this Statement, including accompanying information, and to the best of my knowledge and belief, it is true, correct and complete.*

| SIGNATURE OF CORRESPONDENT OR RESPONSIBLE PARTY | DATE |
|---|---|
| n. _ _ Land Transfer, LLC, By: | August 24, 2005 |

(SEE REVERSE)

57 (Rev. 6/93)

Exhibit # 10  "F-1"

Exhibit F-1

Letter Dec 19, 2006 from
Hugg to Goldin

Notice of Event of Default

" The existence of Joint Venture
Agreement and the failure both
to Disclose...... "

Why then is Bank Drafting
A Subordination and Standstill
Agreement? Answer They Knew
About @ July 20, 2005 Mortgage

Dec 28 10 11:15a    James E Porter                    1 501 7673596        p.1



# OBERMAYER
REBMANN MAXWELL & HIPPEL LLP
*Attorneys At Law*

Jonathan W. Hogg, Esquire
Direct Dial: (215) 665-3161
E-Mail: jonathan.hogg@obermayer.com

One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103-1895
P (215) 665-3000
F (215) 665-3165
www.obermayer.com

December 19, 2006

**VIA U.S. MAIL AND CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**

Porterra, LLC,                                    **NOTICE OF EVENT OF DEFAULT**
Nunzio Terra and Laura Terra

c/o

Ely Goldin, Esquire
The Pavilion, Suite 601
261 Old York Road
Jenkintown, PA 19046

      Re:    **Notice of Event of Default**
             **$5,860,000 Loan with Porterra, LLC and Commerce Bank, N.A.**
             **dated August 24, 2005;**
             **Guaranteed by Nunzio Terra and Laura Terra, h/w**

Dear Mr. Goldin:

As you know, I am counsel for Commerce Bank, N.A. I am directing this Notice to you because you represent Porterra, LLC and Nunzio Terra and Laura Terra, and because the Pennsylvania Rules of Professional Conduct therefore prohibit me from directly contacting them. Please let me know immediately if for some reason you will not transmit this Notice to them.

Pursuant to the Construction Loan Agreement (the "Loan Agreement") between the parties, Commerce Bank, N.A. (the "Bank") hereby gives you and your clients notice that the following Event of Default has occurred under Porterra, LLC (the "Borrower")'s loan with the Bank, dated August 24, 2005, and in the original principal amount of $5,860,000 (the "Loan"), for the acquisition and development (the "Project") of 1039-1055 Frankford Avenue, Philadelphia, Pennsylvania (the "Property").

The Loan Agreement states that the following is an Event of Default:

*Over a Century of Solutions.*

Harrisburg
Pennsylvania

Pittsburgh
Pennsylvania

Cherry Hill
New Jersey

ID: 0601 02487

R614

Dec 28 10 11:15a       James E Porter

Porterra, LLC,
Nunzio Terra and Laura Terra c/o
Ely Goldin, Esquire
December 19, 2006
Page 2

> *Section 7.01(7)—The occurrence and continued existence of a material adverse change, in the reasonable determination of the Bank, in the financial condition of the Borrower, or a material impairment, in the reasonable determination of the Bank, in the value or priority of the Lender's security interests or mortgage liens in the Collateral.*

(emphasis supplied)

As you and your clients are aware, the Project has been the subject of litigation since July 2006 regarding the rights of the members of the Borrower, Nunzio Terra ("Terra") and James Porter ("Porter"). This litigation has resulted in the virtual standstill of the Project. As has been represented to the Bank by the Borrower, the Borrower has not paid third party vendors, and at least two mechanic's liens have been filed against the Property. Despite months of effort, both Porter and Terra have been unwilling even to agree on advance requests to pay these third party vendors, resulting in threats of additional litigation by both Terra and Porter, including against the Bank. Work does not appear to be continuing at the Property.

As a result of the above, the Bank believes there has been, and continues to be a "material adverse change" in the financial condition of the Borrower causing the Borrower to be unable to pay its vendors and continue the Project. Further and related thereto, the Bank believes there is a "material impairment" in the value of the Lender's security interests, as the Property sits only partially developed.

In addition, the following defaults have occurred under Section 7.01 which, if not cured with the noted timeframes, shall also constitute additional Events of Default pursuant to the Loan Agreement.

1) <u>Violation of Section 7.01(2) regarding compliance with all conditions, provisions, agreements or stipulations contained in the Loan documents.</u>

As a result of this litigation, it has come to light that a side agreement exists between Terra and Porter (the "Joint Venture Agreement"), about which the Bank had not been informed. Not until August 2006 did the Bank receive a copy of the Joint Venture Agreement. That document, among other things, contains numerous restrictions, significant payment obligations and specifically overrides the powers vested in the officers of the Borrower—all relating to Porter and Terra's powers and responsibilities regarding the Project. The Bank believes such restrictions have significantly hindered the Borrower's ability to complete the Project, and to

Case ID: 070203257

Control No.: 11010261

R615

Dec 28 10 11:17a      James E Porter

Porterra, LLC,
Nunzio Terra and Laura Terra c/o
Ely Goldin, Esquire
December 19, 2006
Page 3

repay the Loan.  Had the Bank known of these agreements and obligations prior to the Loan, it would have rejected the opportunity to enter into the Loan.

The existence of this Joint Venture Agreement, and the failure both to disclose and deliver copies of it to the Bank prior to the closing of the Loan, is a direct violation of Section 4.06 of the Loan Agreement, wherein the Borrower represents that it is not a party to any "agreement or instrument" that could have a material adverse effect on the business, properties, assets, operations or conditions, financial or otherwise, of the Borrower or the ability of the Borrower to carry out its obligations under the Loan Documents.  The failure of the Borrower to disclose the Joint Venture Agreement prior to closing was a material omission of a known fact.

Pursuant to Section 7.01(2), your clients have twenty (20) days from the date of this letter to terminate the Joint Venture Agreement, and the obligations thereunder; failure to do so shall constitute another Event of Default under the Loan.

2) Violation of Section 7.01(5) regarding placement of a lien against the Property.

As you and your clients are aware, mechanic's liens were filed against the Property on or about June 30, 2006 and September 15, 2006.  Unless your clients can produce proof to the Bank's satisfaction that these liens were satisfied, are bonded, or are covered by the Borrower's insurance policies, each lien is an additional Event of Default, since more than 45 days have past from they were filed.

As a result of the above Event of Default and pursuant to the Bank's rights under the Loan Agreement 7.01, the Bank hereby notifies you and your clients that it has accelerated the Loan, and is demanding immediate repayment of all obligations owed by the Borrower under the Loan.

Failure to immediately repay the Loan in full shall leave Commerce Bank no choice but to exercise any and all remedies available to it immediately, including liquidation of all collateral securing this Loan.  Among the remedies the Bank intends to immediately exercise is its right to confess judgment.  So as to be clear, failure to remedy these defaults and repay the Loan in full—or offer a plan to repay the Loan which is satisfactory to the Bank—will cause the Bank to immediately pursue all available rights under the Loan documents and at law to obtain repayment of the entire outstanding balance of the Loan.

In addition, as of the date of this notice, the Bank, pursuant to Section 22(a)(i) of the Mortgage and Security Agreement is permitted, and has elected, to increase the rate of interest to

Control No.: TGW0261    Control No.: 020303257    4099513

Case ID: 060701487

R616

Porterra, LLC,
Nunzio Terra and Laura Terra c/o
Ely Goldin, Esquire
December 19, 2006
Page 4

the Default Rate of Interest, which rate of interest is three percent (3%) above the current interest rate, until repayment in full occurs.

Please immediately contact me at 215-665-3261 regarding your clients' plans to repay the Loan and cure the Events of Default detailed in this letter.

I thank you for you and your clients' prompt attention to this letter.

Very truly yours,

JONATHAN W. HUGG

Case ID: 07020325 7

Confidential 4099518

Case ID: 060701487

R617

.

Exhibit # 11  "T-2"

Exhibit - T-2

UPS Invoice July 23-2005
Bank and Loan Officer for
Bank received Documentation
from United Land Transfer
July 20, 2005



SHIP: 0000Y9V016      INVOICE DATE: 07/23/05      INVOICE NUMBER: 000000Y9V016305
ISS  REGION: 09 DISTRICT: 33 COUNTRY: US
TING NUMBER: 1ZY9V0161396243974                INTERNET ID : unitedlt
SER INFORMATION:                 RECEIVER INFORMATION:
Cashman
and Land Transfer, LLC          GMAC MORTGAGE CORP
Bennett Road                    7 CARNEGIE PLAZA
Philadelphia         PA 19116  US  CHERRY HILL          NJ 08003  US

KING NUMBER: 1ZY9V0160290570508                INTERNET ID : unitedlt
SER INFORMATION:                 RECEIVER INFORMATION:
Cashman                          Joseph L. Rago
and Land Transfer, LLC          Commerce Bank
Bennett Road                    Construction & R.E. Financing
Philadelphia         PA 19116  US  KING OF PRUSSIA       PA 19406  US

KING NUMBER: 1ZY9V0161391341313                INTERNET ID : unitedlt
SER INFORMATION:                 RECEIVER INFORMATION:
Cashman
and Land Transfer, LLC          Commerce Bank
Bennett Road                    17000 Horizon Way
Philadelphia         PA 19116  US  MOUNT LAUREL          NJ 08054  US

KING NUMBER: 1ZY9V0161392095329                INTERNET ID : unitedlt
SER INFORMATION:                 RECEIVER INFORMATION:
Cashman
and Land Transfer, LLC          America's Wholesale Lender
Bennett Road                    1210 Northbrook Drive
Philadelphia         PA 19116  US  TREVOSE              PA 19053  US

KING NUMBER: 1ZY9V0161390736532                INTERNET ID : s l jakeman
SER INFORMATION:                 RECEIVER INFORMATION:
Jakeman                          Shapiro
Land Transfer                   Yelena Shapiro
Bennett Road                    246 Lindley Avenue
Philadelphia         PA 19116  US  PHILADELPHIA          PA 19120  US

KING NUMBER: 1ZY9V0160299800387                INTERNET ID : unitedlt
SER INFORMATION:                 RECEIVER INFORMATION:
Cashman

Exhibit # 12  "D-2"

Exhibit D-2
Letter to State Judge from
Plaintiffs Attorney
January 3, 2011
The Day before the Sheriff Sale

# NOCHUMSON P.C.

1616 Walnut Street
Suite 1819
Philadelphia, Pennsylvania 19103
Telephone: (215) 399-1346
Facsimile: (215) 399-1347
www.nochumson.com

Writer's email:
alan.nochumson@nochumson.com

January 3, 2011

Via Facsimile

The Honorable Howland W. Abramson
Pennsylvania Court of Common Pleas of Philadelphia County
485 City Hall
Philadelphia, PA 19107

**Re:     Commerce Bank, N.A. v. Porterra, LLC**
**          C.C.P., Philadelphia County; February Term, 2007; No. 03257**

Dear Judge Abramson:

        I am respectfully requesting that Your Honor reconsider the merits of the Order dated December 29, 2010 and reschedule the hearing for later this afternoon.

        By cancelling the hearing which was scheduled for this morning, Ms. Porter has been denied the opportunity to address with this Court why the responses to the motion made by the bank and the former receiver are factually and legally deficient.

        Both the bank and the former receiver heavily rely upon the existence of the joint venture agreement which Ms. Porter's husband, James Porter, and Nunzio Terra entered into prior to the settlement of the bank loan. In their responses, both the bank and the former receiver attempt to argue that Ms. Porter, by way of the joint venture agreement, agreed to subordinate her mortgage to the financing provided by the bank. First of all, Ms. Porter is not a contractual party to the joint venture agreement and is thus not legally bound by its terms and conditions.

        Even if Ms. Porter did sign the joint venture agreement (which she did not), the bank and the former receiver conveniently ignore the fact that the bank's very own mortgage would be of no legal consequence if the terms and conditions of the joint venture agreement had actually been enforced. The joint venture agreement specifically provides that any mortgage entered into

Case ID: 06070148?
Control No.: 11011512

The Honorable Howland W. Abramson
Pennsylvania Court of Common Pleas of Philadelphia County
January 3, 2011
Page -2-

by Porterra, LLC had to be executed by all of its members.  Mr. Porter, a member of Porterra, LLC, never signed the bank's mortgage.  For that reason alone, the bank, not Ms. Porter, should be chastised for what has transpired to date.

It is my understanding that, since the day of settlement, Mr. Porter has attempted to unwind the bank loan.  When he first attempted to do so, he pointed out to the bank that the joint venture agreement so required his signature.  At that time, the bank pled ignorance to the very existence of the joint venture agreement.  In their responses, the bank and the former receiver shockingly fail to disclose this.  Prior to the Order being entered I had, in fact, subpoenaed both Jonathan Hugg and David Nasatir, who represented the bank at that time, to appear at the hearing.  Both of them would have testified that the bank did not know of the existence of the joint venture agreement when the loan transaction was consummated and that this mortgage foreclosure action was partly filed due to the existence of this "side agreement" which the bank had not been informed of prior to settlement.

The bank and the former receiver, in their responses, then attempt to argue that Ms. Porter admitted in her previous court filings that the mortgage she received from Porterra, LLC when she transferred the property was not delivered to her and thus the mortgage is of no legal consequence.  She, of course, received that mortgage.  During the hearing, Ms. Porter was prepared to testify that she only agreed to transfer her interest in the property after Porterra, LLC provided her with a mortgage and note in the amount of $2.8 million.  After receiving the mortgage from Porterra, LLC, she gave the mortgage for recording to United Land Transfer, LLC, the title insurance company which subsequently also handled the bank loan.  That title insurance company failed to deliver the recorded mortgage to her and instead only recorded the bank's mortgage.  Unbeknownst to Ms. Porter at the time, the title insurance company was owned and operated by Mr. Terra and, worse, the bank was one of its secured creditors.  The bank's unclean hands would have been disclosed by Ms. Porter at the time of the hearing.

Not only did the bank's own title insurance company know of the existence of Ms. Porter's mortgage prior to and at the time of settlement, but so did the bank's attorney.  At the hearing, I was prepared to produce an email which Mr. Nasatir received days prior to settlement which disclosed the existence of Ms. Porter's mortgage as well as the subordination agreement and release of mortgages which he drafted and demanded that Ms. Porter sign prior to settlement.  The bank proceeded forward with settlement despite Ms. Porter never agreeing to so subordinate her mortgage.

To add insult to injury, the bank and the former receiver believe that this Court's decision to strike a different mortgage which was subsequently provided by Porterra, LLC to Ms. Porter has some bearing on the validity of the mortgage she received when she transferred the property.  The former receiver even has the audacity to claim that Ms. Porter and her husband recorded that

The Honorable Howland W. Abramson
Pennsylvania Court of Common Pleas of Philadelphia County
January 3, 2011
Page -3-

subsequent mortgage. That is simply not true. First of all, unlike the mortgage she received when she transferred the property, that mortgage was only signed by Mr. Terra on behalf of Porterra, LLC, in violation of the joint venture agreement, upon which the bank and the former receiver now so desperately rely. The reason why she did not dispute the striking of this mortgage is because that is not the mortgage she agreed to accept at the time she transferred the property. At the hearing, I had planned to explain all of this.

It is patently clear that the issue of whether the mortgage issued by Porterra, LLC on July 20, 2005 to Ms. Porter has priority over the bank's mortgage has never been addressed by this or any other Court. Since the bank knew of the existence of Ms. Porter's mortgage prior to settlement and failed in its attempt to so subordinate her mortgage and lent money to Porterra, LLC anyway, this Court cannot and should not allow the bank and the former receiver from estopping the priority status of her mortgage under these circumstances.

Based upon the foregoing, I am thus respectfully requesting that this Court give Ms. Porter her proverbial day in court before allowing the sheriff's sale to take place.

Thank you in advance for Your Honor's continued guidance.

Respectfully submitted,

Alan Nochumson

cc:     Robert H. Nemeroff, Esquire (via e-mail)
        Tricia J. Sadd, Esquire (via e-mail)

The Honorable Howland W. Abramson
Pennsylvania Court of Common Pleas of Philadelphia County
January 3, 2011
Page -4-

---

bcc:   Debra Porter (via e-mail)