IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| DEBRA PORTER, : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 10-7243 |
| : | |
| TD BANK, N.A., *et al.*, : | |
| : | |
| Defendants. : | |

**MEMORANDUM**

YOHN, J.                                                                                                          December 5, 2012

Plaintiff, Debra Porter, moves for reconsideration of my August 27, 2012, memorandum and order granting summary judgment in favor of defendants, TD Bank, N.A. ("TD Bank") and Pardes Group, Inc. ("Pardes"). She also moves for leave to file a second amended complaint to include a damages claim against TD Bank and, at the same time, moves for summary judgement in her favor on the proposed damages claim. Finally, she asks that I unseal the record of a hearing that was held in this case on June 18, 2012. For the reasons set forth below, I will deny Porter's motion in its entirety.

The full background of this case is set out in my memorandum and order dealing with defendants' summary judgment motion, *see Porter v. T.D. Bank, N.A., et. al.*, No. 10-7243, 2012 WL 3704817 (E.D. Pa. Aug. 27, 2012). I briefly recount the pertinent factual and procedural history here. In July 2005, plaintiff and her husband transferred a piece of property ("Property") to Porterra, LLC ("Porterra")—an entity formed by her husband, James Porter, and Nunzio Terra—in return for a mortgage on the property securing a $2.8 million note to plaintiff. The

transfer was executed pursuant to a Joint Venture Agreement ("JVA") between Mr. Porter and Mr. Terra, which outlined the parties' plans for developing the land that plaintiff and her husband transferred. Plaintiff gave a copy of her mortgage to United Land Transfer, LLC ("ULT") for recording, but ULT never did so.

In August 2005 TD Bank loaned money to Porterra as part of a project to develop the Property. The loan was secured by a mortgage on the Property, recorded on August 25, 2005. Ultimately, the development project was a failure, spawning extensive litigation. In July 2006 the Porters brought a state-court action against Porterra, Terra, ULT, and others, claiming money damages for Debra Porter's loss of a security interest in the Property (the "Porterra Action"). In December 2009 the Porters won money damages in the amount of nearly $3.7 million.

Meanwhile, in February 2007, TD Bank initiated a foreclosure action on the Property in the Philadelphia Court of Common Pleas. The court consolidated the foreclosure action and the Porterra Action, even though Debra Porter was not a party to the former. In September 2010[1] TD Bank won a judgment of approximately $5.4 million against Porterra and a sheriff's sale of the Property was set for January 4, 2011.

Plaintiff attempted to intervene in the foreclosure action after judgement was entered and postpone the sheriff's sale. However, the Court of Common Pleas denied her motion; on December 29, 2010, it issued an order stating that she was "judicially and collaterally estopped from claiming anything more than a subordinate mortgage on the [P]roperty" and that TD Bank's

---

[1] In the August 27, 2012, memorandum I mistakenly stated that the court entered judgement in the foreclosure action on September 9, 2009, based on the state court's opinion of April 10, 2012. The correct date, as plaintiff points out in the instant motion, and as verified on the state court docket, is September 9, 2010.

mortgage had priority. (Defs.' Mot. for Summ. J. Ex. L.) On April 10, 2012, the Superior Court of Pennsylvania affirmed, agreeing that plaintiff was "collaterally estopped from arguing that her unrecorded mortgage" took priority over TD Bank's mortgage. (Defs.' Mot. for Summ. J. Ex. B at 12.) In the meantime, defendant Pardes had purchased the Property at the sheriff's sale.

Plaintiff initiated this federal action on December 12, 2010, seeking a declaration that her mortgage on the Property had priority status. On August 27, 2012, I granted summary judgment in favor of TD Bank and Pardes because I concluded that plaintiff was bound by the Pennsylvania courts' determination of collateral estoppel on December 29, 2010 and April 10, 2012. On September 10, 2012, plaintiff filed the instant "Motion for Reconsideration and to Amend the Complaint and Grant a Summary Judgment for Damages Against TD Bank" ("Pl.'s Mot. for Reconsideration"), which I construe as a tripartite motion to (1) alter judgment under Federal Rule of Civil Procedure 59(e); (2) amend the complaint to include a claim for damages against TD Bank; and (3) grant summary judgment in plaintiff's favor on the proposed damages claim.

Plaintiff also filed a "Supplemental Praecipe for the Motion for Reconsideration" ("Supplement") on September 29, 2012. She provides additional arguments and exhibits to support her motion for reconsideration. She also requests that I unseal a hearing that was held before me on June 18, 2012, have it transcribed, and "attach it to th[e]" supplement so that it can be considered as part of her current motion.[2] (Supplement at 17.)

**I.     Motion to alter judgment**

---

[2] The hearing on June 18, 2012, concerned plaintiff's counsel's motion to withdraw. On June 20, 2012, I placed the hearing under seal and ordered that it was not to be transcribed unless otherwise directed by the court.

3

I see no adequate reason to revise my order of August 27, 2012. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). A court may grant a motion for reconsideration if the moving party demonstrates at least one of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [issued its order]; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Mere dissatisfaction with a court's ruling, however, is not a proper basis for reconsideration, *see Progressive Cas. Ins. Co. v. PNC Bank, N.A.*, 73 F. Supp. 2d 485, 487 (E.D. Pa. 1999), and such a motion should not be used "to merely attempt to convince the court to rethink a decision it has already made," *Colon v. Colonial Intermediate Unit 20*, 443 F. Supp. 2d 659, 667 (M.D. Pa. 2006).

Plaintiff does not point to a change in controlling law, nor have I discovered any. Plaintiff does provide exhibits that were not attached to her "Response in Opposition to Intervenor's Motion for Summary Judgment," filed July 2, 2012. But this evidence is not "new."[3] Moreover,

---

[3] The exhibits in the motion for reconsideration were attached to plaintiff's original "Response in Opposition to Intervenor's Motion for Summary Judgement," which was filed on June 18, 2012. (Pl.'s Mot. for Reconsideration ¶¶ 6, 7.) This filing, however, was in error and I ordered it stricken on the same day. When plaintiff filed her July 2 response, the exhibits were no longer attached. (*Id.* ¶ 6.) Therefore, the evidence is not technically new for purposes of Rule 59(e), since it was obviously available to plaintiff before I issued my order granting summary judgment.

All but one of the exhibits in plaintiff's supplemental praecipe clearly predate my August, 27, 2012, order. Plaintiff attaches an amended transcript of a hearing held before me on October 20, 2011. Plaintiff sought the amendments, but did so after August 27. The amended transcript was filed by the clerk's office on November 20, 2012. Whether or not this amended transcript is "new" (after all, plaintiff could have requested the corrections and provided the transcript well in advance of the order challenged here), the amendments are frivolous and the evidence is

it is irrelevant to my determination on the collateral estoppel issue, which was dispositive. It only goes toward proving that TD Bank knew of plaintiff's (unrecorded) mortgage at the time it undertook financing of Porterra's development project. Therefore, plaintiff's motion cannot prevail on the new-evidence prong. *See Interfaith Community Organization Inc. v. PPG Industries, Inc.*, 702 F. Supp. 2d 295, 317 (D.N.J. 2010) (Greenaway, J.) ("To permit reconsideration when new evidence becomes available, the moving party must present new evidence that would alter the disposition of the case."); *cf. Rosado v. Virgil*, No. 12-1904, 2012 WL 2369355, at *2 (3d Cir. 2012) (denying motion for reconsideration where new evidence "would not appear in any way to cure the deficiencies" of plaintiff's case).[4]

As for the third basis—correcting error of law or fact or preventing manifest injustice—I remain convinced that I must give preclusive effect to the Pennsylvania Superior Court's determination of collateral estoppel. I am not without sympathy to plaintiff's plight. There is evidence that suggests that ULT, perhaps purposely,[5] neglected to record her mortgage. Porter also claims that TD Bank, despite apparently knowing about plaintiff's mortgage and without securing her signature on a mortgage subordination agreement, went ahead and financed the development project anyway. Yet these are matters that plaintiff needed to present in state court, where she had a full and fair opportunity to litigate them. Neither of these circumstances changes

---

irrelevant.

[4] Plaintiff uses a significant portion of her brief to complain about her attorney's actions. This may be grist for a malpractice claim, but it is not relevant to the dispositive collateral estoppel issue.

[5] Nunzio Terra, James Porter's business partner, owned and operated ULT, a fact unknown to plaintiff at the time she submitted her mortgage for recording. (Defs.'s Mot. for Summ. J. Ex. B at 3.)

the reality that "the Full Faith and Credit Act requires that federal courts give the state-court judgment, and particularly the state court's resolution of the res judicata issue, the same preclusive effect it would have had in another court of the same State." *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 526 (1986).

The Court of Common Pleas, in a June 27, 2011, opinion explaining its order of December 29, 2010—an opinion that neither party provided to the court—outlined the reasons behind its finding of collateral estoppel. The JVA, which dictated the terms of the land development project, explicitly states that plaintiff's mortgage "shall be subordinate only to the construction loan" of TD Bank, a crucial fact not previously disclosed by either party. *Commerce Bank, N.A. v. Porterra, LLC*, Feb. Term, 2007 No. 3257, at 3 (Pa. Ct. Com. Pl. June 27, 2011). Even though TD Bank's foreclosure action and the Porterra Action were consolidated, plaintiff did not attempt to intervene and oppose the entry of judgement of foreclosure. *Id.* at 4. Furthermore, when plaintiff maintained the Porterra Action, all her claims were based on the JVA. Thus, "having prevailed on her JVA based mortgage claims in the Porter Action, she is judicially and collaterally estopped from now asserting that the JVA is not the basis for her mortgage claim . . . the JVA gave Mrs. Porter only a second mortgage lien, subordinate to the [TD Bank m]ortgage." *Id.* at 4-5.

The Superior Court affirmed the decision of the Court of Common Pleas. While it disagreed with the lower court's finding of judicial estoppel, it did agree with the finding of collateral estoppel. It reasoned that the Porters had based their claims in the Porterra Action on both the JVA and the priority of the so-called "First Mortgage." (Defs.' Mot. for Summ. J. Ex. B at 10.) The trial court never resolved the "First Mortgage" priority claim in the Porterra action,

6

which awarded only money damages, but the Porters did not appeal this "alleged non-resolution." (*Id.* at 12.) Because plaintiff "had a full and fair opportunity to litigate this issue" in the Porterra Action, but failed to do so, she was collaterally estopped from asserting the priority of her mortgage in the foreclosure action. (*Id.* at 12.) Since a Pennsylvania court would give preclusive effect to the determination of collateral estoppel by the Superior Court, *see Porter*, 2012 WL 3704817, at *5, I must do so here.[6]

## II. Motion to amend complaint

Plaintiff moves to amend her complaint for a second time to add a claim for damages against TD Bank. Rule 15(a)(2) governs my analysis; it dictates that I should "freely give leave [to amend] when justice so requires."[7] "Th[e] liberal amendment philosophy [of Rule 15] limits the district court's discretion to deny leave to amend. The district court may deny leave to amend only if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party." *Adams*, 739 F.2d at 864. "Moreover, the court may deny a request if the movant fails to provide a draft amended complaint or may refuse to allow an amendment that

---

[6] Plaintiff seems to argue that, had her attorney filed an appeal of the Superior Court's April 10, 2012, order, then there would be no determination of collateral estoppel to force my hand. Plaintiff is incorrect. *See, e.g.*, *Shaffer v. Smith*, 673 A.2d 872, 874 (Pa. 1996) ("A judgment is deemed final for purposes of res judicata or collateral estoppel unless or until it is reversed on appeal.").

[7] Technically, the request for leave to amend is part and parcel of the motion to alter judgment, because if I allow plaintiff to amend, I must necessarily vacate my order and re-open the case. *See Cureton v. NCAA*, 252 F.3d 267, 272 (3d Cir. 2001) (citing *Adams v. Gould*, 739 F.2d 858, 863-64 (3d Cir. 1984) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 n.1 (5th Cir. 1981))). But here, the standards of Rule 15 govern, *see Cureton*, 252 F.3d at 272-73, rather than the standards that were applicable to plaintiff's "freestanding" motion for reconsideration addressed above. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 231 (3d Cir. 2011) ("[I]t would be a needless formality for the court to grant the motion to reopen the judgment only to deny the motion for leave to amend." (internal quotation marks omitted)).

fails to state a cause of action." *Cureton*, 252 F.3d at 273 (internal citation omitted).

I will deny leave to amend.[5] Plaintiff does not provide a draft amended complaint. This itself might not be fatal, except it is also unclear from her motion what new claim she would like to advance.[6] Moreover, this action is now almost two years old. The parties have been litigating the essential facts in state court for over six years. The events at issue occurred more than seven years ago. Discovery has closed here and defendants filed a motion for summary judgment, which the court granted on August 27, 2012. The plaintiff has given no reason for waiting until now to attempt to amend the complaint. I find that plaintiff's conduct amounts to undue delay. *See Cureton*, 252 F.3d at 273 ("[T]he question of undue delay requires that we focus on the movant's reasons for not amending sooner."); *id.* ("When a party delays making a motion to amend until after summary judgment has been granted to the adverse party, other courts have recognized that the interests in judicial economy and finality of litigation may become particularly compelling."). And certainly plaintiff fails to state a cause of action, because she

---

[5] Thus, I need not discuss whether plaintiff is entitled to summary judgment on her unstated claim.

[6] Despite the caption of plaintiff's motion—and the way TD Bank construes it—it seems that plaintiff does not wish to add a claim; rather, she is merely requesting the court to grant damages along with declaratory judgment. *See* Pl.'s Mot. for Reconsideration at 14 ("The last page of Amended complaint Filed February 4, 2011 states[, w]herefore, Ms. Porter requests that this Court enter judgment in her favor by declaring that the First Mortgage has priority status over the Second Mortgage and *awarding such further relief which it deems proper and just under the circumstances*." (emphasis in original)).

A court may grant damages along with declaratory judgment, whether or not damages are requested. *See* 28 U.S.C. § 2202; 10B Charles Alan Wright et al., *Federal Practice and Procedure* § 2771 (3d ed. 2012). But if plaintiff is not attempting to supplement her complaint, then her motion fails for the reasons discussed earlier.

states no claim at all.[7]

Finally, and perhaps most importantly, plaintiff's proposal to amend her complaint a second time does nothing to suggest that she could overcome the preclusive effect of the state courts' collateral estoppel determination. Because amendment would be futile, I will not grant leave to amend.

### III. Motion to unseal hearing of June 18, 2012

"The appropriate approach in considering motions to modify confidentiality orders is to use the same balancing test that is used in determining whether to grant such orders in the first instance." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994). The decision to unseal is broadly discretionary, *see United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007), and "the district court is best situated to determine what factors are relevant to the dispute." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

I originally ordered that the hearing of June 18, 2012, be sealed because it centered on a payment dispute between plaintiff and her attorney; it contained information that defendants need not be privy to and that could prejudice plaintiff's case. I have reviewed the record, and I find that the hearing does not contain any information that is relevant to plaintiff's instant motion. However, because plaintiff requests that I lift a seal originally instituted for her benefit, there is no countervailing factor to support confidentiality. The sealing order will be vacated and plaintiff is free to order a transcript at her own expense.

---

[7] A court should be generous in construing the pleadings of a *pro se* litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But even granting plaintiff all possible leeway, I cannot simply conjure up a nonexistent claim.

**IV.     Conclusion**

       For the reasons stated above, I will deny plaintiff's motion in its entirety except for her request to unseal the record of the June 18, 2012, hearing. An appropriate order follows.